Alex R. Straus (SBN: 321366)
**TENSOR LAW, P.C.**
2716 Ocean Park Blvd.
Santa Monica, CA 90405
Telephone:   310-450-9689
Facsimile:   310-496-3176
astraus@tensorlaw.com

[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]

Counsel for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARK COMIN, on behalf of himself and all others similarly situated,

    Plaintiff,

  v.

INTERNATIONAL BUSINESS MACHINES CORPORATION,

    Defendant.

**CLASS ACTION COMPLAINT**
**Jury Trial Demanded**

Plaintiff Mark Comin, individually, and on behalf of all others similarly situated, brings this Class Complaint against Defendant International Business Machines Corporation ("IBM") and alleges the following:

**INTRODUCTION**

1.    California Labor Code Section 2751 requires that an employer provide sales representatives who earn commissions with an enforceable written contract setting forth the method by which commissions shall be computed and paid that is signed by the employer.

CLASS ACTION COMPLAINT
Jury Trial Demanded

2. IBM employs hundreds, if not thousands, of sales representatives and managers throughout California who earn sales commissions. However, IBM does not provide those employees with a written, signed, enforceable contract regarding their commissions.

3. Instead, IBM provides its sales representatives with a letter that expressly states it is not a contract or promise by IBM to pay any sales commissions. IBM explains its commissions plans with PowerPoint type presentations that promise uncapped sales commissions and encourage sales representatives to exceed their quotas each sales period.

4. However, IBM often caps sales commissions or otherwise does not pay the full commissions due to sales representatives. As a result, it has been sued over two dozen times around the country (including at least six times in California) for failing to pay sales representatives the commissions they were due. Each time, IBM has taken the position in court that it was not obligated to pay any commissions to the representatives because it did not have a contract that required payment of the commissions.

5. IBM's sales representatives and even managers are often surprised to learn that IBM does not have a binding contract to pay them sales commissions.

6. IBM's bait and switch where it makes sales representatives believe that they will be paid uncapped sales commissions in accordance with their commissions formula, and then often does not pay as such is precisely the type of conduct that the California Labor Code seeks to deter through its requirement that employers provide written contracts that set forth the method by which commissions will be computed and paid to their sales representatives.

7. Plaintiff Mark Comin is another victim of IBM's blatant disregard for California's Labor Code.

CLASS ACTION COMPLAINT
Jury Trial Demanded

8. Plaintiff filed this action to recover the damages he, as well as hundreds of other sales representatives in California, have incurred from IBM's wrongful withholding of sales commissions and to stop IBM's deceptive and unlawful practices in how they structure and administer commissions for all IBM employees in the State of California who are on commission incentive plans.

## PARTIES

1. Mr. Comin is a citizen of San Rafael, California, in Marin County.

2. Mr. Comin worked for IBM for over seventeen years, from approximately January 2001 through February 2018.

3. IBM was incorporated, and is existing, under the laws of the State of New York.

4. IBM's principal place of business is in the State of New York.

5. IBM was and is an employer under the California Labor Code and common law.

6. IBM employed Plaintiff and other employees performing sales work for IBM in California.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act. The amount in controversy exceeds $5,000,000 and there are members of the proposed Class who are citizens of a State different from the State of Citizenship of IBM.

8. This Court may exercise personal jurisdiction over IBM because IBM conducts substantial business in this State and within the Northern District of California, receives substantial compensation and profits from the marketing, distribution, and sales of products and services in this District, and has engaged in the unlawful practices described in this Complaint in this District.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## INTRADISTRICT ASSIGNMENT

10. This action is properly assigned to the San Francisco Division of this District pursuant to N.D. Cal. L.R. 3-2, because a substantial part of the events or omissions giving rise to Plaintiff's claims arose in the counties served by the San Francisco Division. Mr. Comin, who is the proposed class representative, as well as dozens, if not hundreds, of class members reside in the counties served by this Division. Moreover, IBM conducts substantial business in the counties served by this Division.

## COMMON FACTUAL ALLEGATIONS

11. IBM is a global technology company that provides hardware, software, cloud-based services, and cognitive computing.

12. IBM employs sales representatives and managers throughout the United States that it tasks with selling its products and services.

13. During all relevant times, IBM's employees that earn sales commissions have typically been on one of seven types of commissions plans.

14. Typically, under these plans the employees are provided with an annual compensation number called "on-target earnings" ("OTE") which is what the individual's total compensation will be if the individual achieves 100% of his/her quota for the year. The OTE is split between a base salary and commissions. The two most common splits are 55/45 (where 55% of the compensation comes from the base salary, and 45% comes from sales commissions) and 70/30 (where 70% of the compensation comes from a base salary, and 30% comes from sales commissions).

15. Three of those commissions plans are categorized as Individual Plans, three are Pool Plans, and one is categorized as a Services Plan.

4
CLASS ACTION COMPLAINT
Jury Trial Demanded

16. The three Individual Plans are: (1) Individual Quota Plan (IQP), (2) Absolute Sales Plan – Straight Rate, and (3) Absolute Sales Plan – Opportunity Based.

17. Commissions under these plans are uncapped and paid based on achievement results (i.e., the amount of products and services sold) rather than on an assessment of employee contribution.

18. The three Pool Plans are: (1) Team Quota Plan, (2) Solutions for Growth Plan, and (3) Performance Pool Plan.

19. Under the pool plans, a set amount of commissions is divided among groups of employees based on achievement by the group as a whole.

20. The Services Plan is a commissions plan that is available to executives and other roles that are focused on large contract delivery, customer satisfaction, and base growth.

21. IBM splits each calendar year into two sales periods and typically refers to those as the 1H (first half) and 2H (second half).

22. At the beginning of each sales period, IBM provides each sales representative with a substantially similar, standardized document called an Incentive Plan Letter ("IPL").

23. The IPLs are typically about five pages long and contain some limited information that is specific to each individual sales representative, such as the representative's quota for that period, the territory the sales representative is responsible for, and the rate at which the sales representative will earn commissions for that period.

24. The majority of the five pages is devoted to uniform disclaimers. These disclaimers are the same in each sales representative's IPL for each sales period.

5

CLASS ACTION COMPLAINT
Jury Trial Demanded

25. Among other things, the disclaimers state that the IPL "is not an express or implied contract or a promise by IBM" to pay commissions to that employee.

26. IBM does not have any other contract with its California based sales employees who earn commissions regarding the calculation and payment of those commissions.

27. In the past several years, IBM has routinely failed to pay employees the commissions reflected by the quotas contained in IPLs and other inputs shown on IBM's online commissions workplace.

28. As a result, several sales representatives and managers have sued IBM for not paying them commissions that they were owed.

29. Each time, IBM's defense has been the same: IBM owes nothing because the employees do not have an enforceable contract for the payment of commissions. IBM claims that the IPL is not an enforceable contract, nor is there any other enforceable contract.

30. Indeed, IBM has argued that the IPL is not an enforceable contract, nor is there any other enforceable contract in each of the following cases:

    a. *Gilmour v IBM*, Case No. CV 09-04155 SJO (C.D. Cal.);

    b. *Schwarzkopf v. IBM*, Case No. CV 08-2715 JF (N.D. Cal.);

    c. *Kemp v. IBM*, Case No. 3:09-cv-03683 (N.D. Cal);

    d. *Pfeister v. IBM*, Case No. 17-cv-03573 (N.D. Cal.);

    e. *Swafford v. IBM*, Case No. 5:18-CV-04916 (N.D. Cal.);

    f. *Beard v. IBM*, Case No. 3:18-CV-06783 (N.D. Cal.);

    g. *Geras v. IBM*, Case No. 10cv-00001-WDM-CBS (D. Colo.);

    h. *Bereuter v. IBM*, Case No. 8:10-cv-327 (D. Neb.);

    i. *Kavitz v IBM*, Case No. 4:08-cv-5591 (S.D.N.Y.);

j. *Chiaffitelli v. IBM*, Case No. 003150/11 (Sup. Ct. NY, Nassau County);

k. *Pero v. IBM*, Case No. 12-cv-07484 (D.N.J.);

l. *Wilson v. IBM*, Case No. 1:12-cv-1406 (N.D. Ga.);

m. *Tang v. IBM*, Case No. 2014-11444 (Cir. Ct. Fairfax Cty., Va.);

n. *IBM v. Khoury*, Case No. 2016-0258 (Sup. Ct. N.H.);

o. *Rapier v. IBM*, Case No. 1:17-CV-4740 (N.D. Ga.);

p. *Snyder v. IBM*, Case No. 1:16-CV-03596 (N.D. Ga.);

q. *Morris v. IBM*, Case No. 18-CV-0042 (W.D. Tex.);

r. *Choplin v. IBM*, Case No. 1:16-CV-1412 (M.D.N.C.);

s. *Stephenson v. IBM*, Case No. 1:17-CV-1141 (M.D.N.C.);

t. *Vinson v. IBM*, Case No. 1:17-CV-00798 (M.D.N.C.);

u. *Middleton v. IBM*, Case No. 1:18-CV-03724 (N.D. Ga.);

v. *Fessler v. IBM*, Case No. 1:18-CV-00798 (E.D.Va.);

w. *Kingston, Temidis, & Lee v. IBM*, Case No. 156289/2018 (Sup. Ct. N.Y.);

x. *Lamping v IBM*, 2005 WL 4693547 (W.D. Pa.);

y. *Cashman v IBM*, Case No. 05-10306-RWZ (D. Mass.);

z. *Jensen v IBM*, Case No. 04-CA-1316 (E.D. Va.);

aa. *Rudolph v IBM*, Case No. 09-C-428 (N.D. Ill.);

bb. *Camobreco v. IBM*, Case No. 1:19-CV-10242 (D. Mass.) and

cc. *Martignetti v. IBM*, Case No. 1:18-CV-02431 (D. Md.).

31. Several of these cases, including at least *Swafford* and *Beard*, involved incentive plans from the last four years.

32. Despite both *Swafford* and *Beard* involving claims for unpaid commissions by sales representatives on 55/45 pay mixes, IBM's litigation position

7

CLASS ACTION COMPLAINT
Jury Trial Demanded

was that the IPLs at issue "did not create a contractual obligation that required IBM to pay Plaintiff additional commissions."

33. Moreover, IBM argued on appeal in *Middleton* that "Middleton's IPL, while failing to create any contractual obligations requiring IBM to pay him commissions, was a document that spelled out the parties' respective rights and responsibilities regarding the payment of commissions."

34. California Labor Code Section 2751 dictates that "[w]henever an employer enters into a contract of employment with an employee for services to be rendered within this state and the contemplated method of payment of the employee involves commissions, the contract shall be in writing and shall set forth the method by which the commissions shall be computed and paid." Cal. Lab. Code § 2751.

35. This provision clearly requires that an employer provide a sales representative whose pay includes sales commissions with an enforceable contract for the payment of the commissions.

36. The requirement that all employers provide employees earning commissions with a written commission contract became effective January 1, 2013.

37. An enforceable contract protects commissioned sales employees from exactly the type of bait and switch behavior IBM is engaging in, where it promises compensation to sales representatives of a base salary plus uncapped sales commissions, but then unilaterally decides not to pay the commissions on certain occasions.

38. The situation where an employer "holds all of the cards" with respect to how much to pay in sales commissions is precisely what this statute is designed to protect employees from.

39. Without an enforceable contract the commissions would simply be discretionary bonuses, which IBM's sales commissions undisputedly are not.

CLASS ACTION COMPLAINT
Jury Trial Demanded

40. Because IBM has openly admitted that it does not have an enforceable contract for the payment of commissions to its employees, IBM's commissions program cannot satisfy the requirements of California Labor Code Section 2751.

41. Indeed, in *Swafford*, in her Order Granting in Part, Denying in Part, IBM's Motion for Summary Judgment, the Honorable Lucy H. Koh stated that "the Court agrees with Swafford that the IPL is not a contract and that the IPL therefore cannot satisfy the requirements of California Labor Code Section 2751."

## **PLAINTIFF'S FACTS**

42. Mr. Comin began his employment as an IBM sales representative in approximately January 2001.

43. During his time with IBM, Mr. Comin was responsible for selling various IBM products and services.

44. At all relevant times, Mr. Comin's compensation consisted of a base salary paired with uncapped commissions, and the incentive plan he was on was the Individual Quota Plan.

45. Each sales period, Mr. Comin was provided with a document titled an IPL, which described some of the terms of his commissions plan, as alleged above.

46. However, in each sales period the IPL expressly stated that it was not an express or implied contract for the payment of commissions, as alleged above.

47. At no time during his employment by IBM was Mr. Comin provided any other contract for the payment of his calculations.

48. During his employment with IBM, three different times IBM refused to pay him the full commissions he earned on deals that he closed.

49. Each of these situations would have been avoided had IBM provided him with a contract that complied with Cal. Labor Code Section 2751 that set forth how his commissions would be calculated and paid.

9
CLASS ACTION COMPLAINT
Jury Trial Demanded

50. The first situation was a deal involving the sale of an IBM product named IBM Cloud Identity to AECOM in December 2016 ("AECOM Deal").

51. The AECOM Deal consisted of revenue to IBM from Mr. Comin's products of approximately $6.4 million over the life of the deal. Of this, $925,000 should have been credited to him for purposes of calculation of his commissions. Instead, IBM paid him nothing for this deal.

52. Despite the fact that Mr. Comin performed the work, and closed the deal related to his products, after the AECOM Deal closed IBM assigned all of the revenue attributed to the products and services that he sold to another department, and credited Mr. Comin with nothing from the sale.

53. Mr. Comin received credit for commissions purposes for products booked under Software Group part numbers, but not for Global Technology Services part numbers. In the AECOM Deal, IBM decided that it was going to book the revenue under a Global Technology Services part number so that it would not have to pay Mr. Comin his commissions even though he performed the work necessary to close the deal.

54. The second time that Mr. Comin was not paid his full commissions was June of 2017.

55. This time, Mr. Comin closed a deal for the sale of a third-party product called Carbon Black Response that IBM licensed to Intel ("Carbon Black Deal").

56. The Carbon Black Deal was for two, one-year subscriptions, and totaled $3.375 million in commissionable revenue to Mr. Comin.

57. In the seven previous sales of this product by other IBM sales representatives, IBM paid commissions on the full amount of the sale.

58. After Mr. Comin closed the deal, the commissionable revenue of $3.375 million initially registered in his Attainment report.

10
CLASS ACTION COMPLAINT
Jury Trial Demanded

59.  However, after initially registering in his attainment report at the full value as it should have, IBM reversed the credit and only provided him with 10% of the commissionable revenue.

60.  Prior to Mr. Comin's closure of this deal, there had been seven prior sales of this particular product.

61.  Each of those seven prior deals resulted in the sales representative being credited with 100% of the commissionable revenue for the deal..

62.  Mr. Comin was not provided any explanation why he was only credited with 10% of the commissionable revenue on this deal until after he noticed the reversal on his commission statement.

63.  IBM did not credit the remaining 90% of the sale to any other sales representative. IBM routinely does not credit sales to other employees when it cuts commissions.

64.  The third time that Mr. Comin was not paid the full commissions he earned was in September 2017, regarding a sale of IBM products and services to Apple ("Apple Deal"). The product Mr. Comin sold to Apple was named IBM Security Gaurdium.

65.  The Apple Deal closed September 30, 2017 and should have been for approximately $1.15 million in commissionable revenue to Mr. Comin.

66.  However, as the Apple Deal was closing, an IBM executive expressed a desire to include other products in the deal and close it as one larger deal known as an ELA.

67.  One of the products that executive wanted to include was a product called Emptoris. However, Apple needed a component of Emptoris that IBM was going to need to develop separately, which would take approximately 18 months.

68.  Emptoris was not a product Mr. Comin was responsible for.

CLASS ACTION COMPLAINT
Jury Trial Demanded

69. IBM booked the Apple Deal at the time it closed in September 2017, but its finance department refused to flow any commissions to any sales representatives who were owed commissions on the Apple Deal until either the product was delivered to IBM or the 18 month mark was reached.

70. It has been over 18 months, and Mr. Comin has not been paid any commissions from the Apple Deal. As the Emptoris product was outside of the scope of his products, he does not know whether the Emptoris product was ever provided to Apple.

71. Moreover, Mr. Comin was never provided a justification for why his commissions on the Apple Deal were help up since his products were not related to the Emptoris product issue.

72. Out of frustration with IBM's refusal to pay him the sales commissions that he earned, Mr. Comin left IBM in February 2018.

## **CLASS ACTION ALLEGATIONS**

73. Plaintiff brings this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) seeking injunctive and monetary relief for IBM's systematic refusal to provide its sales representatives with contracts for the payment of their sales commissions and improper withholding of sales commissions.

### A. **Class Definition**

74. Plaintiff brings this action on behalf of the following class and subclass:

Class:

All persons residing or who resided in the State of California while working for IBM on a commissions incentive plan during the Relevant Time Period.

Subclass:

All persons residing or who resided in the State of California while working for IBM on a commissions incentive plan during the Relevant Time Period and that

12

were not paid the amount of commissions reflected in the individual's commissions formula.

75. The Relevant Time Period is four years prior to the date the complaint was filed in this action through the present.

76. Plaintiff reserves the right to amend the Class and SubClass definitions if discovery and further investigation reveal that the Classes should be expanded, divided into subclasses under Rule 23(c)(5), or modified in any other way.

77. Plaintiff is a member of the Classes he seeks to represent.

78. The sales commission practices described herein have been and are continuing in nature.

### B. Rule 23(a) and Rule 23(b)(3) Requirements

#### a. Numerosity

79. The proposed Classes are so numerous that joinder of all members is impracticable.

80. Upon information and belief, there are hundreds, perhaps thousands, of members of the proposed Classes.

81. The Class members are ascertainable through IBM's centralized and electronically maintained records.

#### b. Commonality

82. The prosecution of Plaintiff's claims will require the adjudication of numerous questions of law and fact common to the class. The common questions of law and fact predominate over any questions affecting only individual Class members. The common questions include:

   a. Whether the terms of Defendant's standardized IPLs comply with California law governing earned commission wages;

   b. Whether Defendant's standardized IPLs comply with Cal. Labor Code § 2751;

13

CLASS ACTION COMPLAINT
Jury Trial Demanded

    c. Whether IBM paid less to the Class members than the formulas in the IPLs provided for;

    d. Whether IBM should be ordered to disgorge all or part of the ill-gotten profits it received by not paying its sales representatives in accordance with their commissions formulas;

    e. Whether the Class is entitled to damages and the amount of damages;

    f. The amount of formulaic damages due to each member of the Classes;

    g. Whether IBM should be enjoined from continuing to be out of compliance with Cal. Labor Code § 2751; and

    h. In other ways as shown in discovery.

### c. Typicality

83. Plaintiff has suffered the same violations and similar injuries as other Class members arising out of and caused by IBM's common course of conduct. All Class members were subject to the same corporate practices as alleged herein, in particular, by being provided standardized commissions plans that were purportedly not a contract and ultimately being subjected to reduced commissions payments.

84. Plaintiff possesses and asserts each of the claims he asserts on behalf of the proposed Classes.

85. Plaintiff seeks similar relief as other Class members.

### d. Adequacy of Representation

86. Plaintiff is an adequate class representative.

87. Plaintiff's interests are coextensive with those of the members of the proposed Classes. Plaintiff is willing and able to represent the proposed Classes fairly and vigorously as he pursues his similar individual claims in this action.

88. Plaintiff will fairly and adequately protect the interests of the Classes because they have no interests antagonistic to, or in conflict with, the Classes that Plaintiff seeks to represent.

89. Plaintiff has retained counsel sufficiently qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to litigate a class action of this size and complexity.

### e. Predominance & Superiority

90. A class action is superior to other available means for the fair and efficient adjudication of this controversy.

91. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly where individual class members lack the financial resources to vigorously prosecute a lawsuit against a large corporation such as IBM.

92. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

93. Current IBM employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are often fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

94. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Classes, establishing incompatible standards of

CLASS ACTION COMPLAINT
Jury Trial Demanded

conduct for IBM and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

95. The issues in this class action can be decided by means of common, class-wide proof. In addition, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

96. IBM has acted on grounds generally applicable to Plaintiff and the proposed Class by adopting and following systematic policies, practices, and procedures that deprive sales employees of earned commission wages. Refusal to pay all commission wages is IBM's standard operating procedure, rather than a sporadic occurrence.

97. IBM has acted or refused to act on grounds generally applicable to Plaintiff and the proposed Class. IBM's systematic conduct justifies the requested injunctive and declaratory relief with respect to the Class as a whole.

### f. Injunctive/Declaratory Relief

98. Injunctive, declaratory, and affirmative relief are a predominate form of relief sought in this case. Entitlement to declaratory, injunctive, and affirmative relief flows directly and automatically from proof of IBM's refusal to comply with California Labor Code § 2751 and to pay all commission wages due. In turn, entitlement to declaratory, injunctive, and affirmative relief forms the factual and legal predicate for the monetary and non-monetary remedies for individual losses caused by IBM's systemic refusal to pay full commissions.

### C. Requirements of Rule 23(c)(4) Issue Certification

99. Additionally, or in the alternative, the Court may grant "partial" or "issue" certification under Rule 23(c)(4). Resolution of common questions of fact and law would materially advance the litigation for all Class members.

## FIRST CLAIM FOR RELIEF

**(Violation of the California Unfair Competition Law)**

100. Plaintiff re-alleges and incorporates the prior paragraphs of this Complaint as if fully set forth herein.

101. IBM is a "person" as defined under California Business & Professions Code Section 17021.

102. California Business and Professions Code § 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices." IBM has engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL.

103. IBM's conduct, as described herein, was and is in violation of the UCL.

104. IBM's conduct violates the UCL in at least the following ways:

   a. by knowingly refusing to provide a written commissions contract to Mr. Comin and the Classes;

   b. by willfully failing to pay all earned commissions wages to Mr. Comin and the Classes; and

   c. by violating other California laws, including but not limited to, California Labor Code Section 2751.

105. Furthermore, any failure to pay wages is, by definition, an unfair business practice under Section 17200.

106. IBM's actions alleged herein caused Plaintiff and the Classes to sell as many of IBM's products and services as they could, often at the expense of quality time with their families that they would not otherwise have sacrificed had they known that IBM would not pay them the commissions they earned.

107. Accordingly, Plaintiff and the Classes have suffered injury in fact including lost money as a result of Defendant's refusal to pay the full earned commissions and then relying on its failure to provide a written contract that clearly

set forth the method by which commissions shall be computed and paid as a basis for not paying the commissions.

108. IBM should be made to disgorge these ill-gotten gains and to restore to Mr. Comin and the Classes the wrongfully withheld wages to which they are entitled, as well as interest on these wages.

109. As alleged above, Labor Code Section 2751 states, in pertinent part: "Whenever an employer enters into a contract of employment with an employee for services to be rendered within this state and the contemplated method of payment of the employee involves commissions, the contract shall be in writing and set forth the method by which the commissions shall be paid." The statute also provides that an employer must give a "signed" copy of the contract to the employee and obtain a receipt for the contract from the employee.

110. As alleged above, IBM violated section 2751 because the IPL undisputedly is not a contract, and therefore it is not sufficient under section 2751, and there is no other document that is a written contract sufficient under section 2751. Furthermore, IBM violated section 2751 because IBM did not sign any sufficient contract (and it did not sign the IPL), nor did IBM obtain a receipt from Plaintiff or the Class for their receipt of any written contract.

111. A violation of section 2751, even if it cannot support a standalone claim, can serve as a predicate violation for a claim under the UCL.

112. Plaintiff alleges a claim against IBM for violation of the UCL for its unlawful conduct in violating the provision of section 2751, as outlined above.

113. Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendant under Cal. Bus. & Prof. Code § 17200 *et seq*.

114. Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin IBM from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the Class Members any money it acquired by

unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code §17203; and for such other relief set forth below, including, but not limited to Plaintiff's attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Comin and the Classes pray the Court for the following relief:

1. That the Court certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2. That the Court name Plaintiff as Class Representative and his counsel as Class Counsel;

3. That the Court grant restitution to Plaintiff and the Class and require IBM to disgorge ill-gotten gains and monies by which it was unjustly enriched;

4. That Mr. Comin and the Class have and recover from IBM for violations of the California Unfair Competition Law injunctive relief authorized by Business and Professions Code Section 17200 *et. seq.*;

5. That the Court award attorneys' fees to Plaintiff pursuant Cal. Civ. Proc. Code § 1021.5 and any other applicable law;

6. That the Court award Plaintiff and the Classes pre-judgment and post-judgment interest at the highest legal rate provided by law;

7. That all costs of this action be taxed against IBM; and

8. That the Court award Mr. Comin and the Class such other and further relief as this Court may deem just and proper.

This the 3rd day of November, 2019

                BY:   /s/ *Alex R. Strauss*
                         Alex R. Straus (SBN: 321366)
                         **TENSOR LAW, P.C.**
                         2716 Ocean Park Blvd.
                         Santa Monica, CA 90405
                         Telephone:   310-450-9689

CLASS ACTION COMPLAINT
Jury Trial Demanded

| | |
|---|---|
| 1 | Facsimile:   310-496-3176 |
| 2 | astraus@tensorlaw.com |
| 3 | Matthew E. Lee (*pro hac vice*) |
| | Jeremy R. Williams (*pro hac vice*) |
| 4 | **WHITFIELD BRYSON &** |
| | **MASON, LLP** |
| 5 | 900 W. Morgan Street |
| 6 | Raleigh, NC 27603 |
| | Telephone: (919) 600-5000 |
| 7 | Facsimile: (919) 600-5035 |
| | matt@wbmllp.com |
| 8 | jeremy@wbmllp.com |
| 9 | |
| | Mark R. Sigmon (*pro hac vice*) |
| 10 | **SIGMON LAW, PLLC** |
| | 5 West Hargett Street, Suite 1001 |
| 11 | Raleigh, North Carolina 27601 |
| 12 | Telephone: (919) 451-6311 |
| | Facsimile: (919) 882-9057 |
| 13 | mark@sigmonlawfirm.com |
| 14 | |
| | *Counsel for Plaintiff* |

20

CLASS ACTION COMPLAINT
Jury Trial Demanded