UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK COMIN,<br><br>    Plaintiff,<br><br>    v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION (IBM),<br><br>    Defendant. | Case No. 19-cv-07261-JD<br><br>**ORDER RE MOTION TO DISMISS**<br><br>Re: Dkt. No. 24 |

Plaintiff Comin has sued his former employer, defendant International Business Machines Corporation (IBM), on behalf of a putative class under California Labor Code Section 2751 and the Unfair Competition Law (UCL), and for breach of contract. Dkt. No. 23. Comin alleges that IBM had a practice of not providing sales representatives with a written contract about commissions, which Section 2751 requires, and failing to pay commissions as they came due. IBM asks to dismiss the Labor Code and UCL claims under Federal Rule of Civil Procedure 12(b)(6), to strike the class definition as overbroad under Rule 12(f), to dismiss or strike Comin's prayer for injunctive and declaratory relief for lack of standing under Rule 12(b)(1), and to strike Comin's demand for a jury trial on the UCL claim. Dkt. No. 24.

The Court found the motion suitable for decision without oral argument. Dkt. No. 39. Dismissal is granted for the Labor Code claim. It is denied for the UCL claim. The challenge to the class definition is better made at the Rule 23 stage, and is denied on that basis. Comin does not contest that injunctive and declaratory relief are unavailable to a former employee such as him, and his prayers for these forms of relief are stricken. The issue of the jury trial demand is deferred pending further developments in the case with respect to the contract claim.

**BACKGROUND**

As alleged in the amended complaint, Comin worked for IBM as a sales representative in California for over 17 years before leaving in 2018. *Id.* ¶¶ 2, 6, 75. IBM paid Comin and other sales reps with a combination of a fixed salary and commissions. *Id.* ¶¶ 14, 47. The commissions were a sizable portion of a rep's earnings, and typically amounted to 30-45% of annual compensation. *Id.* ¶ 14. IBM split the work year into two six-month pay periods and gave the reps at the start of each period an "Incentive Plan Letter" (IPL), which outlined sales targets and the rate at which the representative would earn commissions. *Id.* ¶¶ 22-23, 48. The IPLs had disclaimers stating that they were "not an express or implied contract," or a promise to pay commissions. *Id.* ¶¶ 25, 49. IBM had no other written contract with its employees for the commissions. *Id.* ¶¶ 26, 50.

Comin alleges three occasions when IBM did not pay him the full amount of the commissions he was owed for closing large deals. *See id.* ¶¶ 51, 53-74. In two instances, IBM never credited him with the full commissionable revenue associated with the deals, even though Comin had performed all the work necessary to earn the sales commissions. *See id.* ¶¶ 53-56, 67-74. In another instance, IBM initially credited Comin for over $3 million in commissionable revenue, but later retroactively reversed 90% of the credit without any explanation. *Id.* ¶¶ 57-66.

Comin alleges that IBM has engaged in a "bait and switch" scheme in which it incentivized sales reps with the promise of potentially large commissions under the IPLs, only to renege and deny that that the IPL was an enforceable contract when pay day arrived. *Id.* ¶ 6. According to Comin, this is not the first time a sales rep has challenged this practice. The amended complaint catalogs 29 other lawsuits that have raised similar claims. *Id.* ¶¶ 28-30. Comin alleges a putative class of IBM employees in California subject to a commissions incentive plan, and a "subclass" consisting of the same group of employees who were not paid commissions as described in their personalized rates. *Id.* ¶ 77.

# DISCUSSION

## I. LEGAL STANDARDS FOR RULE 12(B)(6)

The standards governing the motion to dismiss under Rule 12(b)(6) are well-established. *See McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2018 WL 2688781, at *1 (N.D. Cal. June 5, 2018). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint make "a short and plain statement of the claim showing that the pleader is entitled to relief." To meet that rule, and survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This calls for "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility analysis is "context-specific" and not only invites but "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## II. THE SECTION 2751 CLAIM

Section 2751 of the California Labor Code states in pertinent part that employers must provide employees to be paid with commissions a written contract that sets forth "the method by which the commissions shall be computed and paid." Cal. Lab. Code § 2751(a). Count Two of the amended complaint alleges that IBM failed to meet this statutory requirement.

If the question for the motion to dismiss were only whether Comin has plausibly alleged a violation under Section 2751, the Court would not hesitate to find that he did. The complaint provides ample facts to conclude that IBM used commissions to pay sales reps without an adequate written agreement.

But the issue is whether Comin has a private right of action to bring a Section 2751 claim. He does not. "A violation of a state statute does not necessarily give rise to a private right of action. Instead, whether a party has a right to sue depends on whether the legislature has manifested an intent to create such a private cause of action under the statute. Such legislative intent, if any, is revealed through the language of the statute and its legislative history." *Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th 592, 596-97 (2010) (internal citations, quotations, and footnote omitted).

As Comin acknowledges, the problem he faces is that the California Legislature amended a companion Labor Code provision, Section 2752, to eliminate a private right to sue on the requirement of a written contract for commissions. *See* Dkt. No. 29 at 8-9. In its original form, Section 2751 applied only to out-of-state employers, and was paired with Section 2752, which expressly made employers who violated this statute "liable to the employee in a civil action for triple damages." Cal. Lab. Code § 2752 (repealed 2011).

In 2011, the California legislature changed this statutory scheme in a manner that bars Comin's claim. It revised Section 2751 to apply to all employers, not just those outside California, in response to a federal district court decision holding that the original text unconstitutionally discriminated against out-of-state employers. *See Lett v. Paymentech, Inc.*, 81 F. Supp. 2d 992, 993 (N.D. Cal. 1999); Cal. Assemb. B. 1396, Stats. 2011, ch. 556 (A.B. 1396), § 1 ("The Legislature hereby finds and declares that this bill is enacted in light of the holding in Lett v. Paymentech, Inc."). It also repealed Section 2752 *in toto*, including the private right of action it granted. *See* A.B. 1396 § 3. Consequently, as Section 2751 currently stands, it does not provide for an employee's right to sue for a breach of the written contract requirement.

Comin says this was just a drafting oversight. He offers committee reports to suggest that the Legislature intended to repeal only the triple damages provision in Section 2752, and not the right to sue. *See* Dkt. No. 29 at 8-12. In effect, Comin contends that the Legislature held down the delete button too long, and invites the Court to look beyond the plain language of Section 2751 to restore the Legislature's "true" intent.

The request is not well taken. Comin relies entirely on committee reports, which are "often drafted by unelected staffers" and "cannot alter a statute's plain language." *People v. Johnson*, 60 Cal. 4th 966, 992 (2015). The wholesale repeal of Section 2752, and with it the grant of a private cause of action, is hardly the type of minor scrivener's error that a court might have some warrant to correct. *See U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 462 (1993); *see also Lamie v. U.S. Trustee*, 540 U.S. 526, 540 (2004). Nothing in the text of Section 2751 establishes a right for employees to sue, and the Court has no license to create one on the basis of an unenacted legislative intent, particularly when that ostensible intent is directly

4

contrary to the repeal of a prior statute that allowed a right to sue. *See Lamie*, 540 U.S. at 540 (court's role is not to "rescue" legislators from "drafting errors" in order to reach a "preferred result" (quoting *United States v. Granderson*, 511 U.S. 39, 68 (1994) (Scalia, J., concurring))); *see also Lu*, 50 Cal. 4th at 603 (a "statute's language" is "the best indicator of whether a private right to sue exists").

In addition, this is hardly an issue that has been hidden from the Legislature's attention and any corrective action it might wish to pursue. Another district court flagged the issue as early as 2013, and mentioned the same legislative history materials that Comin proffers here. *See Belderol v. Glob. Tel*Link*, No. CV 13-05440-SJO (MANx), 2013 WL 12142537, at *5 & n.8 (C.D. Cal. Oct. 15, 2013). That court was not called upon to decide whether there is a private right to sue *vel non* under Section 2751, and made only a passing comment in a footnote that it appeared "likely" that the right survived the repeal of Section 2752. *See id.* This comment was not grounded in the plain language of Section 2751 after the 2011 amendments, and several courts since have determined that no private cause of action is available. *See, e.g., Beard v. Int'l Bus. Machines Corp.*, No. 18-CV-06783-WHA, 2019 WL 1516592, at *6 (N.D. Cal. Apr. 7, 2019); *Swafford v. Int'l Bus. Machines Corp.*, 383 F. Supp. 3d 916, 934 (N.D. Cal. 2019). These judicial developments over the course of several years have, at the very least, provided the Legislature with ample notice of its "mistake," as Comin would have it, and the opportunity to fix it, which it is presumed to know how to do. *See Vasquez v. Solo 1 Kustoms, Inc.*, 27 Cal. App. 5th 84, 96 (2018) (citing *Moradi-Shalal v. Fireman's Fund Ins. Companies*, 46 Cal.3d 287, 250 (1988)), *as modified* (Sept. 11, 2018). It has not acted, and no California state court appears to have found an implied right to sue under Section 2751. In these circumstances, principles of federalism counsel that a federal court be restrained in creating a legal right that the California Legislature and courts have not seen fit to do.

Consequently, the Court concludes that there is no private right of action under Section 2751. A remedy for a violation of Section 2751 may be available under California's Private Attorneys General Act of 2004, Cal. Lab. Code § 2698 *et seq.* (PAGA), which allows private citizens to collect civil penalties for violations of the Labor Code. *See* Cal. Lab. Code § 2699(f).

1    A violation of Section 2751 is also a predicate for a UCL action, as discussed in the following
2    section. But it is not a claim in itself, and so Count Two is dismissed with prejudice.

**III.   THE UCL CLAIM**

The familiar and frequently litigated UCL prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "When analyzing a UCL claim, courts consider each of the three prongs to determine whether a practice is unlawful, unfair, or fraudulent. Adequately pleading any one of the prongs is sufficient to survive a motion to dismiss." To state a claim under the UCL, a plaintiff must allege facts showing that she has "suffered an injury in fact and . . . lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. The "lost money or property" requirement "requires a plaintiff to demonstrate 'some form of economic injury' as a result of his transactions with the defendant." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (citing *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 323 (2011)). Consequently, to state a UCL claim, Comin must allege facts plausibly showing a "causal connection" between IBM's unfair or illegal practices and an economic injury that he suffered. *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010) (quotation omitted).

Comin has succeeded. The complaint alleges that IBM expressly disclaimed that the IPLs were written contracts, and that IBM did not satisfy the requirements of Section 2751 in any other written agreement. *See* Dkt. No. 23 ¶¶ 25-26, 49-50; *see also id.* ¶¶ 28-30 (IBM has denied it had enforceable commissions contracts with its employees in nearly 30 separate lawsuits). IBM does not disagree that a Section 2751 violation may serve as a predicate for a UCL claim under the unlawful prong. Consequently, the basic elements of a UCL claim are well pleaded.

IBM's main challenge to the UCL count is that Comin has not plausibly alleged a cognizable economic injury attributable to IBM's conduct. Dkt. No. 24 at 5-8. Not so. "[U]nlawfully withheld wages are property of the employee within the contemplation of the UCL." *Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163, 178 (2000). This includes commissions. *See id.* ("earned wages that are due and payable pursuant to section 200 et seq. of the Labor Code" are property); Cal. Lab. Code § 200(a) ("Wages" includes amounts paid on a

6

"commission basis"). Comin plausibly alleges that he personally lost commission compensation because IBM did not provide him with a written contract that he could use to enforce his payment rights. *See* Dkt. No. 23 ¶¶ 51-52, 110, 122. He also plausibly alleges that IBM refused to pay commissions on the grounds that it was not contractually obligated to do so. *Id.* ¶¶ 28-31; *see also id.* ¶ 37 ("An enforceable contract protects commissioned sales employees from exactly the type of bait and switch behavior that IBM is engaging in, where it promises compensation to sales representatives of a base salary plus uncapped sales commissions, but then unilaterally decides not to pay the commissions on certain occasions."). And he states specific instances where he was not paid the full commissions he was owed, including one case where IBM unilaterally and retroactively reduced his commission on a sale. *See id.* ¶¶ 53-74. That is enough to show an economic injury caused by IBM's conduct.

IBM makes the rather odd comment that there is no reason to believe that "a contract sufficient under Section 2751 would ensure full payment" of commissions. Dkt. No. 24 at 7. What this might mean is not at all clear. If IBM is suggesting that it could simply ignore in its own discretion a contract to pay commissions, the comment is ill-taken as a matter of contract and employment law.

## IV.   THE CLASS ALLEGATIONS

IBM's request to get into class definition issues at the pleadings stage is declined. "Although some courts have accepted Rule 12(f) as a basis for deciding the appropriateness of class action issues, this Court considers it a poor fit for that." *Freedline v. O Organics*, No. 19-CV-01945-JD, 2020 WL 6290352, at *1 (N.D. Cal. Oct. 27, 2020) (citation omitted). Rule 12(f) is directed to striking "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "This plain language does not apply in an obvious way" to a dispute over whether a putative class of California commissioned employees is defined too broadly, which is "hardly the stuff of scandal or impertinence." *Freedline*, 2020 WL 6290352, at *1. "Rule 23 proceedings are the optimal basis for deciding this issue." *Id.* Consequently, the Court defers a determination on the adequacy of Comin's class definition to class certification proceedings, and the motion to strike is denied.

## V. REMAINING ISSUES

Comin acknowledged in his opposition brief that he does not have standing to pursue an injunction or declaratory judgment because his is not a current IBM employee. Dkt. No. 29 at 15; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364 (2011). The prayers for declaratory and injunctive relief are stricken.

It is too early to say that there is no room for a jury trial of any sort in this case. It is true that the UCL, as an equitable claim, does not trigger a constitutional right to a jury trial. *See Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990); *Hodge v. Superior Court*, 145 Cal. App. 4th 278, 284-85 (2006). But Comin has a breach of contract claim, albeit pleaded "in the alternative," and it is possible other disputed issues of fact may require resolution of jury. The jury trial determination will be reserved for further consideration at an appropriate time.

**IT IS SO ORDERED.**

Dated: February 9, 2021

JAMES DONATO
United States District Judge