Matthew E. Lee*
Jeremy R. Williams*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
mlee@milberg.com
jwilliams@milberg.com

Counsel for Plaintiffs
* admitted *pro hac vice*

[ADDITIONAL COUNSEL LISTED ON NEXT PAGE]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK COMIN and MARK BRIGGS, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION**,**<br><br>      Defendant. | **Case No. 3:19-cv-07261-JD**<br><br>**PLAINTIFFS' AND DEFENDANT'S JOINT MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED CLASS SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF CLASS NOTICE AND INCORPORATED MEMORANDUM OF LAW**<br><br>DATE: October 6, 2022<br>TIME: 10:00 A.M.<br>COURTOOM: 1 |

1    Matthew E. Lee*
   Mark R. Sigmon*
2    Jeremy R. Williams*
3    **MILBERG COLEMAN BRYSON**
   **PHILLIPS GROSSMAN, PLLC**
4    900 W. Morgan Street
   Raleigh, NC 27603
5    Telephone: (919) 600-5000
   Facsimile: (919) 600-5035
6    mlee@milberg.com
   msigmon@milberg.com
7    jwilliams@milberg.com
8
   Alex R. Straus (SBN: 321366)
9    **MILBERG COLEMAN BRYSON**
   **PHILLIPS GROSSMAN, PLLC**
10    280 Beverly Hills Drive
   Beverly Hills, CA 90212
11    Telephone:    917-471-1894
   Facsimile:    310-496-3176
12    astraus@milberg.com
13
   Kent A. Bronson*
14    **MILBERG COLEMAN BRYSON**
   **PHILLIPS GROSSMAN, PLLC**
15    100 Garden City Plaza
   Garden City, NY  11530
16    Telephone:  (212) 594-5300
   Facsimile: (212) 868-1229
17    kbronson@milberg.com
18
19    *Attorneys for Plaintiffs*
20
21 *Admitted pro hac vice*

Aaron L. Agenbroad (State Bar No.
242613)
alagenbroad@jonesday.com
**JONES DAY**
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: +1.415.626.3939
Facsimile: +1.415.875.5700

Cindi L. Ritchey (State Bar No. 216899)
critchey@jonesday.com
**JONES DAY**
4655 Executive Drive, St. 1500
San Diego, CA 92121
Telephone: +1.858.314.1200
Facsimile: +1.844.345.3178
Email: critchey@jonesday.com

Justin Barnes*
**JACKSON LEWIS**
171 17th Street, NW, Suite 1200
Atlanta, GA 30363
Telephone: (404) 525-8200
Email: Justin.barnes@jacksonlewis.com

*Attorneys for Defendant*

2

**TO THE COURT, ALL PARTIES, AND ALL COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 6, 2022 at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 1, 4th Floor, before the Honorable James Donato, Plaintiffs Mark Comin and Mark Briggs (collectively, "Plaintiffs") and Defendant International Business Machines Corporation ("IBM") respectfully move this Court for preliminary approval of the class action Settlement reached in this case, the terms of which the Parties describe more specifically in the Memorandum of Points and Authorities in support of this Motion.

The Parties request that the Court enter the proposed Preliminary Approval Order and:

1. Preliminarily approve the Settlement;

2. Appoint Mark Comin as the Class Representative and Briggs as the PAGA Representative;

3. Appoint Milberg Coleman Bryson Phillips Grossman, PLLC as Settlement Class Counsel;

4. Certify the Class and Subclass for settlement purposes only;

5. Approve the proposed Notice of Class Action Settlement ("Class Notice") (attached as Exhibit C to the Declaration of Matthew E. Lee) and direct the mailing of the Class Notice to the Class and Subclass; and

6. Schedule a Final Approval Hearing.

The Parties base the motion on the following documents: this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Settlement Agreement, the pleadings, record, and other filings in the case; and such other oral and written points, authorities, and evidence as the parties may present at the time of the hearing on the Motion.

Dated:     August 22, 2022

MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC


By:*/s/ Matthew E. Lee*
Matthew E. Lee

Attorneys for Plaintiffs
MARK COMIN AND MARK BRIGGS

1

Dated:        August 22, 2022

JONES DAY

2

3

By:/s/ *Cindi L. Ritchey*
        Cindi L. Ritchey

4

Attorneys for Defendant

5

INTERNATIONAL BUSINESS MACHINES
CORPORATION

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................. 2

III.  TERMS OF THE SETTLEMENT AGREEMENT AND NOTICE PLAN ...................... 3

    A.  The Proposed Settlement Classes and PAGA Group ......................................... 3

    B.  Class Release ................................................................................................. 3

    C.  Payments to Class Members and the Subclass Members ..................................... 4

    D.  Enhancement Payments ................................................................................... 4

    E.  Attorneys' Fees and Expenses ......................................................................... 5

    F.  PAGA Penalty Payment .................................................................................. 5

    G.  Notice and Administration ............................................................................... 6

IV.  THE SETTLEMENT CLASS AND SUBCLASS SHOULD BE CONDITIONALLY CERTIFIED FOR SETTLEMENT PURPOSES ONLY ................... 6

    A.  The Requirements of Rule 23(a) are Satisfied .................................................. 8

        1.  The Settlement Class is so numerous that joinder is impracticable. ............ 8

        2.  There are questions of law and fact common to the Settlement Class. ........ 8

        3.  Plaintiffs' claims are typical of the claims of the Settlement Class. .......... 10

        4.  Comin will Fairly and Adequately Represent the Settlement Class. ......... 10

    B.  The Requirements of Rule 23(b)(3) are Satisfied ............................................ 11

        1.  Common Questions Predominate ...................................................... 12

        2.  Class Treatment of Plaintiffs' Claims is Superior ................................. 13

    C.  The Class Is Ascertainable ............................................................................ 14

V.  THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ......................... 15

    A.  Rule 23(e)(2)(A): The Class Representative and Class Counsel Have Adequately Represented the Proposed Settlement Class and Subclass. ............... 17

    B.  Rule 23(e)(2)(B): The Settlement was Negotiated at Arm's Length. .................. 18

    C.  Rule 23(e)(2)(C): The relief for the Settlement Class is substantial. .................. 19

        a.  Rule 23(e)(2)(C)(i): The costs, risks, and delay of trial and appeal. ................................................................................. 20

        b.  Rule 23(e)(2)(C)(ii): The effectiveness of the proposed method of distributing relief is adequate. .................................. 21

        c.  Rule 23(e)(2)(C)(iii): The terms and timing of the proposed award of Attorneys' Fees and Costs are fair and reasonable. ....... 22

        d.  Rule 23(e)(2)(C)(iv): There are no supplemental agreements. ...... 22

    D.  Rule 23(e)(2)(D): The Settlement treats Settlement Class Members and Subclass Members equitably relative to each other. .................................. 22

-i-

**TABLE OF CONTENTS**
**CONTINUED**

Page

VI.     PRELIMINARY APPROVAL OF CLASS NOTICE & FORM ...................................... 23

VII.    THE COURT SHOULD APPROVE THE PAGA ALLOCATION ................................. 26

VIII.   SETTLEMENT CONFORMS TO THE PROCEDURAL GUIDANCE FACTORS
        FOR CLASS ACTION SETTLEMENTS ........................................................................ 27

        A.   Guidance 1a-b: Differences ................................................................................. 27

        B.   Guidance 1c-d: The Proposed Settlement Provides a Favorable Recovery
             and Falls Within the Range of Approvability .................................................... 28

        C.   Guidance 1e-f: Allocation Plan Merits Preliminary Approval ............................ 28

        D.   Guidance 1g: Reversions ..................................................................................... 28

        E.   Guidance 2: The Proposed Settlement Administrator .......................................... 29

        F.   Guidance 3: Proposed Notices to Settlement Class are Approvable .................... 29

        G.   Guidance 4 and 5: Opt-Outs and Objections ...................................................... 29

        H.   Guidance 6: The Anticipated Attorneys' Fees and Expenses Request ................. 29

        I.   Guidance 7: The Proposed Settlement and Proposed Enhancement
             Payments Do Not Unjustly Favor any Class Members, including Named
             Plaintiffs ............................................................................................................. 29

        J.   Guidance 8: Cy Pres Recipients .......................................................................... 30

        K.   Guidance 9: Proposed Timeline ........................................................................... 30

        L.   Guidance 10: Class Action Fairness Act ............................................................. 30

        M.   Guidance 11: Past Comparable Settlements ........................................................ 31

IX.     CONCLUSION ............................................................................................................. 31

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

CASES

4

5
*Abdullah v. U.S. Sec. Assocs.*,
    731 F.3d 952 (9th Cir. 2013) ................................................................................................. 9

6

*Acosta v. Trans Union, LLC*,
7    243 F.R.D. 377 (C.D. Cal. 2009) ......................................................................................... 17

8
*Alberto v. GMRI, Inc.*,
9    252 F.R.D. 652 (E.D. Cal. 2008) ......................................................................................... 17

10
*Amchem Prods., Inc. v. Windsor*,
11    521 U.S. 591 (1997) ................................................................................................. 7, 10, 13

12
*Arias v. Superior Court*
13    (2009) 46 Cal.4th 969 ........................................................................................................ 26

14
*Bailey v. Rite Aid Corp.*,
    4:18-cv-06926-YGR, ECF Nos. 157, 169 (June 14, 2022) .................................................. 15
15

16
*Beck-Elleman v. Kaz USA, Inc.*,
    2013 WL 1748729 (S.D. Cal. Jan. 7, 2013) ......................................................................... 15
17

18
*Bellinghausen v. Tractor Supply Co.*,
    306 F.R.D. 245 (N.D. Cal. 2015) ......................................................................................... 29
19

20
*Carlotti v. ASUS Computer Int'l*,
    No 18-cv-03369-DMR, 2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) .................................. 6

21
*Chester v. TJX Companies, Inc.*,
22    No. 5:15-cv-01437-ODW-DTB, 2017 WL 6205788 (C.D. Cal. Dec. 5, 2017) ...................... 21

23
*Chinitz v. Intero Real Est. Servs.*,
    No. 18-CV-05623-BLF, 2020 WL 7042871 (N.D. Cal. Dec. 1, 2020) .................................. 23
24

25
*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ......................................................................................... 16, 23
26

27
*Cincilla v. Ecolab, Inc.*,
    2015 WL 4760318 (N.D. Cal. Aug. 12, 2015) ....................................................................... 7

28

iii

*Fernandez v. Victoria Secret Stores, LLC*,
    No. 06 Civ. 04149, 2008 WL 8150856 (C.D. Cal. July 21, 2008)...........................................19

*Free Range Content, Inc. v. Google, LLC*,
    No. 14-CV-02329-BLF, 2019 WL 1299504 (N.D. Cal. Mar. 21, 2019) ...............................15

*General Tel. Co. v. EEOC*,
    446 U.S. 318 (1980) .........................................................................................................8

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)...........................................................................10, 13, 16, 21

*Harris v. Palm Springs Alpine Estates*,
    329 F.2d 909 (9th Cir. 1964)...............................................................................................8

*Hart v. Colvin*,
    No. 15-cv-00623, 2016 WL 6611002 (N.D. Cal. Nov. 9, 2016) ............................................7

*Herrera v. Wells Fargo Bank, N.A.*,
    No. SACV 18-332JVS(MRWX), 2021 WL 3932257 (C.D. Cal. June 8, 2021) ...................21

*Hilsley v. Ocean Spray Cranberries, Inc.*,
    No. 3:17-CV-2335-GPC-MDD, 2020 WL 520616 (S.D. Cal. Jan. 31, 2020) .......................22

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011)....................................................................................16, 17, 18

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ...............................................................................................18

*In re Magsafe Apple Power Litig.*,
    No. 5:09-CV-01911-EJD, 2015 WL 428105 (N. D. Cal. Jan. 30, 2015)................................29

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ..............................................................................................15

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) .............................................................................17

*Kakani v. Oracle Corp.*,
    No C 06-06493-WHA, 2007 WL 1793774 (N.D. Cal. June 19, 2007)....................................6

*Kearney v. Hyundai Motor America*,
    No. SACV 09-1298-JST, 2012 WL 13049699 (C.D. Cal. Dec. 17, 2012) .....................18, 19

iv

*Keegan v. Am. Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012) ........................................................................ 8

*Louie v. Kaiser Found. Health Plan, Inc.*,
    No. 08-cv-00795-IEG-RBB, 2008 WL 4473183 (S.D. Cal. Oct. 6, 2008) ............ 18

*Misra v. Decision One Mortg. Co.*,
    No. 07-0994, 2009 WL 4581276 (C.D. Cal. Apr. 13, 2009) ................................ 26

*Monterrubio v. Best Buy Stores*,
    291 F.R.D. 443 (E.D. Cal. 2013)......................................................................... 13

*Morales v. Stevco, Inc.*,
    No. 09-00704, 2011 WL 5511767 (E.D. Cal. Nov. 10, 2011) .............................. 21

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*,
    No. 19-cv-07087-DMR, 2021 WL 1788447 (N.D. Cal. May 5, 2021)................... 17

*Narouz v. Charter Commc'ns, LLC*,
    591 F.3d 1261 (9th Cir. 2010).............................................................................. 7

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .................................................................. 19, 20

*Norton v. LVNV Funding, LLC*,
    No. 18-cv-05051-DMR, 2021 WL 3129568 (N.D. Cal. July 23, 2021) ................ 17

*O'Connor v. Uber Techns.*,
    No. 13-CV- 03826-EMC, Docket No. 736 (N.D. Cal. July 29, 2016)................... 26

*O'Connor v. Uber Techs., Inc.*,
    201 F. Supp. 3d 1110 (N.D. Cal. 2016) .............................................................. 26

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982).......................................................................... 7, 16

*Perks v. Activehours, Inc.*,
    No. 5:19-cv-5543-BLF, 2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ................ 16

*Rodriguez v. Gates*,
    2002 WL 1162675 (C.D.Cal. May 30, 2002)....................................................... 14

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009)......................................................................... 19, 27

v

*Sadowska v. Volkswagen Grp. of Am., Inc.*,
   No. 11-cv-00665-BRO-AGR, 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) ...................... 18

*Sandoval Ortega v. Aho Enterprises, Inc.*,
   2021 WL 5584761 (N.D. Cal. Nov. 30, 2021) ........................................................................ 28

*Schwartz v. Upper Deck Co.*,
   183 F.R.D. 672 (S.D. Cal. 1999) ........................................................................................... 14

*Soriano v. Flagship Facility Servs., Inc.*
   (Mar. 20, 2019) Order After Hearing .................................................................................... 26

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................................................ 29

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442, 136 S. Ct. 1036 (2016) ................................................................................... 12

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ................................................................................................ 13

*Vigueras v. Red Robin Int'l, Inc.*,
   No. SACV171422JVSDFMX, 2020 WL 13042722 (C.D. Cal. July 22, 2020) .................... 21

*Villalobos v. Calandri Sunrise Farm LP*
   (C.D. Cal., July 22, 2015) 2015 WL 12732709 .................................................................... 26

*Vinole v. Countrywide Home Loans, Inc.*,
   571 F.3d 935 (9th Cir. 2009) ................................................................................................ 13

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338, 131 S. Ct. 2541 (2011) ...................................................................... 7, 8, 9, 12

*Williams v. Superior Court*
   (2017) 3 Cal. 5th 531 ............................................................................................................ 26

*Wright v. Linkus Enter., Inc.*,
   259 F.R.D. 468 (E.D. Cal. 2009) .......................................................................................... 26

*Xavier v. Philip Morris USA Inc*,
   787 F. Supp. 2d 1075 (N.D. Cal. 2011) ................................................................................ 14

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) .............................................................................................. 13

STATUTES

California Labor Code Private Attorneys General Act, Cal. Labor Code
    §§ 2698 et seq. ............................................................................................ 1

California Labor Code
    § 2699(i) ............................................................................................... 6, 26
    § 2699(l) ................................................................................................... 26
    § 2699(l)(2) ................................................................................................. 6
    § 2751 ............................................................................................... 2, 9, 30

Class Action Fairness Act, 28 U.S.C. § 1711, *et seq.* ...................................... 30

PAGA ................................................................................................... passim

OTHER AUTHORITIES

2 H. Newberg & A. Conte, *Newberg on Class Actions* (4th Ed. 2002) .................... 14, 15

*Manual for Complex Litigation, Fourth* § 21.222 (2004) ............................ 14

*Manual for Complex Litigation*, Fourth, § 21.632-21.635 (2013) ................ 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs, individually and on behalf of the Settlement Class and the State of California, and IBM have entered into a class and representative action Settlement Agreement (the "Settlement," "Agreement," or "Settlement Agreement"), attached to the Lee Declaration as Exhibit A, to resolve all of the claims brought in this Action. Notwithstanding the Parties' disagreement regarding the substantive allegations of the lawsuit, they have been able to reach an agreement to resolve the litigation, subject to this Court's approval. Accordingly, the Parties respectfully submit this Memorandum of Points and Authorities in support of their joint motion for entry of an order that pursuant to Rule 23 of the Federal Rules of Civil Procedure will: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes only the proposed Class and Subclass defined herein, pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure; (3) appoint Comin as Class Representative and Briggs as PAGA representative; (4) approve the Class Notice Program set forth in the Agreement and approve the form and content of the Class Notice; (5) approve and order the opt-out and objection procedures set forth in the Agreement; (6) stay all deadlines in the Action pending Final Approval of the Settlement; (7) appoint as Class Counsel the law firm and attorneys identified herein; and (8) schedule a Final Approval Hearing.

The Court should grant Preliminary Approval because the Settlement provides appropriate relief for the Class and Subclass Members, appropriate penalties under PAGA, and the terms of the Settlement are otherwise within the range of reasonableness and consistent with applicable case law given the significant risks inherent in this Action. The Settlement satisfies all Ninth Circuit criteria for settlement approval. The proposed Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class Members. As described in further detail below, these benefits include payment by IBM of $4,750,000 to be allocated as follows (subject to Court approval): (1) $4,530,000 to the Class Members and to Plaintiffs' Counsel (as attorney's fees and costs); (2) $10,000 to Briggs and $10,000 to Comin as Enhancement Payments; and (3) $200,000 California Labor Code Private Attorneys General Act, Cal. Labor Code §§2698 et seq. ("PAGA") Penalty Payment ($150,000 to the California Labor and Workforce Development Agency ("LWDA") and

$50,000 to the PAGA Group[1]). In addition, IBM shall separately pay all Notice and Administration Costs directly to the Settlement Administrator as such costs and expenses are invoiced.

This Settlement is the product of hard-fought litigation and arm's-length negotiations, which included briefing IBM's motions to dismiss and briefing on the consolidation of *Comin v. IBM* and *Briggs v. IBM*; negotiating case management orders involving coordination of litigation and schedules; intensive fact discovery (including production and review of over 92,000 documents and the taking of 10 depositions), and two lengthy mediations led by a respected independent mediator and continual settlement discussions between the parties between these mediations.

## II.    BACKGROUND

IBM employs more than 1,000 sales representatives and managers throughout California who earn sales commissions. *See* ECF No. 96 at ¶ 2. California Labor Code Section 2751 requires that an employer provide sales representatives who earn commissions with a written contract setting forth the method by which commissions shall be computed and paid. *See id.* at ¶ 1. Plaintiffs claim that IBM does not provide those employees with a written, signed, enforceable contract regarding their commissions. *See id.* at ¶ 2.  Plaintiffs claim that the lack of a contract is especially important because IBM has capped commissions of some of its sales representatives and managers, which the Plaintiffs claim is also contrary to IBM's policies. *See id.* at ¶ 4. It was the alleged capping of commissions, and the failure to provide the contract required under the California Labor Code, that gave rise to this lawsuit which was initiated by Plaintiff Mark Comin on November 4, 2019. *See* ECF No. 1.[2] IBM denies these allegations and contends that it has and continues to comply with Labor Code § 2751 and all applicable laws concerning the payment of commissions.

The Parties conducted extensive discovery, producing and reviewing over 92,000 documents and taking 10 depositions. Near the close of the discovery period, the parties engaged in an initial private mediation session on February 23, 2022 with A. Lee Parks of Henning Mediation and

---

[1] Defined below.

[2] Plaintiff Mark Briggs subsequently filed a class and PAGA representative action asserting the same claims against IBM, which was consolidated with Comin's action. *See* ECF No. 93.

Arbitration Services. The parties were unable to reach a settlement in principle that day, but they made significant progress. Following that mediation, they spent several weeks exchanging additional information and ultimately held a second mediation session with Mr. Parks on May 20, 2022. During this mediation, the parties reached a settlement, and the principal terms were memorialized in a Memorandum of Understanding signed by the Parties at the mediation. If the Parties had not negotiated this Settlement, IBM would have continued vigorously defending this case at every stage of litigation, including opposing class certification.

## III.     TERMS OF THE SETTLEMENT AGREEMENT AND NOTICE PLAN

The Settlement's details are contained in the Settlement Agreement, but a summary of the key terms of the Settlement are below.

### A.     THE PROPOSED SETTLEMENT CLASSES AND PAGA GROUP

The Class is defined as follows: All persons residing or who resided in California while working for IBM on a commissions incentive plan at any time between November 4, 2015 and the date of preliminary approval of the settlement by the Court.

The Subclass is defined as follows: All persons residing or who resided in California while working for IBM on a commissions incentive plan at any time from November 4, 2015 through the date of preliminary approval of the settlement by the Court and who were not paid the amount of commissions reflected in the individual's commissions formula. (This is the group of people whose commissions the Plaintiffs claim were improperly capped.).  For purposes of this Motion, the Class and Subclass are collectively referred to herein as "the Settlement Class" or "Settlement Class Members."

The PAGA Group is defined as follows: All persons residing or who resided in California while working for IBM on a commissions incentive plan at any time between September 5, 2020 through the date of preliminary approval of the settlement by the Court.

### B.     CLASS RELEASE

In exchange for the benefits allowed under the Settlement Agreement, upon the Effective Date, Settlement Class Members who did not timely and validly opt out of the Settlement Class will release and discharge the Released Claims against the Released Persons. *See* Agreement, § V.  The

3

two named Plaintiffs in the Consolidated Action have agreed to participate as Class and/or PAGA Representatives in this matter, have agreed not to request exclusion from the Settlement Class, and have agreed to be bound by the releases set forth in the Settlement Agreement.

Class Members have no opt out rights as to the PAGA portion of the settlement of the Action. Accordingly, upon the Effective Date, in consideration of the PAGA Penalty Payment, Plaintiffs, on behalf of themselves and the State of California, and all PAGA Group members, waive, fully release, and forever discharge the Released Parties from any and all claims under PAGA which were or could have been raised in the Action and that arose on or before the date of final settlement approval.

## C.    PAYMENTS TO CLASS MEMBERS AND THE SUBCLASS MEMBERS

Class Members who do not timely opt out of the Settlement will automatically receive payments as follows:

Each Class Member will receive $300. As explained later, the Class Members include many salespeople whose commissions were never reduced ("capped" as the Plaintiffs claim), meaning that the $300 represents the risk to them of not having an enforceable contract against IBM. Class Members do not need to opt in or submit a claim to receive this payment.

The Subclass Members are those whose commissions Plaintiffs contend were reduced by IBM. The Subclass Members will each receive about half of the disputed commissions (reduced as compared to the commissions formulas in their commissions plans). Specifically, IBM will pay each Subclass Member a pro rata percentage of the amount of their reduced commissions out of what remains of the $4,750,000 ("Settlement Payment") after (1) $300 payments are made, (2) the attorneys' fees and costs are paid, (3) the PAGA Penalty Payment is made; and (4) the Enhancement Payments to Comin and Briggs are made. If none of the Class Members opt out and all receive $300, the Subclass Members will receive approximately 47% of the disputed commissions. Subclass Members do not need to opt in or submit a claim to receive this payment.

## D.    ENHANCEMENT PAYMENTS

As part of the Settlement, subject to Court approval, IBM has agreed not to oppose Plaintiffs' request for Enhancement Payments of up to $10,000 to each of the named Plaintiffs in this Action

4

in recognition of the time and effort they personally invested in this litigation and in exchange for a release of claims. The efforts of Comin (Class Representative) and Briggs (PAGA) in this Action include instigating and filing of the Complaints, providing support to Class Counsel of their claims and attempts to resolve those claims with IBM, providing documents for initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure, providing responses to discovery requests made by IBM pursuant to Rule 408 of the Federal Rules of Civil Procedure, maintaining regular contact with Class Counsel regarding the status of their case, sitting for all-day depositions, attending both mediation sessions, and otherwise working with Class Counsel to prosecute and resolve these actions on behalf of all Settlement Class Members in California and the State of California. The settlement is not contingent on these Enhancement Payments.

### E.    ATTORNEYS' FEES AND EXPENSES

Class Counsel has not yet been paid for their efforts or reimbursed for litigation costs and expenses incurred. The Parties agreed on a percentage of the Settlement Payment to allocate to attorneys' fees only after they agreed on the material terms of the relief to the Class and Subclass, including the total Settlement Payment amount. Class Counsel will file a motion and supporting memoranda prior to the Final Approval Hearing. Class Counsel have agreed to seek an award of not more than $1,583.333.33 in fees plus costs and expenses not to exceed $35,177.38. This amount is consistent with Class Counsel's current lodestar, which is $1,521,256.34 (based on 2742.12 total hours). All Class Counsel Fees and Costs approved by the Court shall be paid from the Settlement Payment. The Parties agree that regardless of any action taken by the Court or any appellate court with respect to Class Counsel Fees and Costs, the validity of the underlying Settlement shall not be affected. Therefore, the effectiveness of the Settlement and the releases are not contingent on the Court's approval of the Fee and Expense Award or determined by the amount of the Fee and Expense Award approved by the Court.

### F.    PAGA PENALTY PAYMENT

$200,000 will be paid from the Settlement Payment as the PAGA Penalty Payment for settlement and release of any and all claims for which penalties under PAGA may be sought or are otherwise available to any member of the Class, which the Parties believe in good faith is a fair and

1   reasonable apportionment. IBM contends that the maximum amount of PAGA penalties Plaintiffs

2   could ever recover would be $279,500, because a violation only occurred (which IBM disputes even

3   occurred at all) once per sales period per person, and the penalty is only $100 per violation. Pursuant

4   to Labor Code § 2699(i), the PAGA Penalty Payment shall be allocated as follows: $150,000 (75%)

5   to the LWDA for the enforcement of labor laws and education of employers, and $50,000 (25%) to

6   the PAGA Group.  Each PAGA Group Member's individual share of the $50,000 total allocable to

7   the PAGA Group shall be calculated with each PAGA Group Member receiving an equal share.

8           **G.**      **NOTICE AND ADMINISTRATION**

9          All costs and fees of the Settlement Administrator shall be paid separately by IBM.  The

10   amounts paid to the Settlement Administrator shall not be paid or deducted from the Settlement

11   Payment.  The Parties agree to cooperate in the administration of the Settlement and to make all

12   reasonable efforts to control and minimize the costs and expenses incurred in the administration of

13   the Settlement. Pursuant to California Labor Code § 2699(l)(2), Class Counsel will notify the

14   LWDA of the Settlement on the same day that the parties file the joint motion for preliminary

15   approval of the Settlement.

16          Notice of the Settlement shall be provided to Class Members.  The Parties believe and agree

17   that the procedures in Section III.E. of the Settlement Agreement for such notice provide the best

18   practicable notice to Class Members, comply with Fed. R. Civ. P. 23, and are consistent with the

19   requirements of due process. *See* Ex. A, Section III.E. The Settlement Agreement also provides

20   procedures for objecting to the settlement and opting out of the settlement. *See* Ex. A, Sections III.F

21   and G.

22   **IV.**     **THE SETTLEMENT CLASS AND SUBCLASS SHOULD BE CONDITIONALLY**
        **CERTIFIED FOR SETTLEMENT PURPOSES ONLY**
23

24          Class actions "are an engine of justice" in our federal system, *Kakani v. Oracle Corp.*, No C

25   06-06493-WHA, 2007 WL 1793774, at *1 (N.D. Cal. June 19, 2007), and "[t]he Ninth Circuit

26   maintains a 'strong judicial policy' that favors the settlement of class actions." *Carlotti v. ASUS*

27   *Computer Int'l*, No 18-cv-03369-DMR, 2019 WL 6134910, at *3 (N.D. Cal. Nov. 19, 2019)

28   (citation omitted).

In assessing certification requirements in the context of a settlement, a court may properly consider that there will be no trial. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). "To obtain class certification, a class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to Rule 23(b)." *See Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010); *see also Cincilla v. Ecolab, Inc.*, 2015 WL 4760318 at *3 (N.D. Cal. Aug. 12, 2015) (When presented with a proposed settlement prior to a ruling on class certification, a court must determine whether the proposed settlement class "satisf[ies] the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) to be certified.").

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348, 131 S. Ct. 2541, 2550 (2011). Under Rule 23(a), the party seeking certification must demonstrate, first, that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id*. at 2548 (*citing* Fed. R. Civ. P. 23(a)). If sufficiently demonstrated, the proposed class must then satisfy at least one of the three requirements listed in Rule 23(b). *Id*. Rule 23(b)(3) requires:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The primary consideration in evaluating a class settlement agreement is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Most importantly, "[t]he proposed settlement must be taken as a whole, rather than the individual component parts in the examination for overall fairness." *Hart v. Colvin*, No. 15-cv-00623, 2016 WL 6611002, at *5 (N.D. Cal. Nov. 9, 2016) (citation and quotation marks omitted).

7

A.     THE REQUIREMENTS OF RULE 23(A) ARE SATISFIED

As set forth more fully below, it is Plaintiffs' position that each of the Rule 23(a) prerequisites are satisfied with respect to the proposed Class. IBM does not dispute that the requirements are satisfied for settlement purposes only but contends class certification would not otherwise be appropriate as it relates to the merits of Plaintiffs' claims.

1.     The Settlement Class is so numerous that joinder is impracticable.

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P 23(a)(1). Impracticability depends on the facts of each case. *See General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980) ("The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations.").  However, "[a]s a general rule, ... classes of 40 or more are numerous enough." *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012) (citation and quotation marks omitted); *see also Harris v. Palm Springs Alpine Estates*, 329 F.2d 909, 913-914 (9th Cir. 1964) ("'impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.").

Here, the Class has been defined as "all persons residing or who resided in California while working for IBM on a commissions incentive plan at any time between November 4, 2015 and the date of preliminary approval of the settlement by the Court" and the Subclass is defined as "all persons residing or who resided in California while working for IBM on a commissions incentive plan at any time from November 4, 2015 through the date of preliminary approval of the settlement by the Court and who were not paid the amount of commissions reflected in the individual's commissions formula." The Class contains approximately 1,500 members and the subclass contains 60 members. Therefore, numerosity is satisfied.

2.     There are questions of law and fact common to the Settlement Class.

The second prerequisite under Rule 23(a) for class certification is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Rule 23(a) does not require that the class members be identically situated. Rather, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores,* 564 U.S. at 350 (*quoting Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). The plaintiffs' "common contention,

8

moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*; *see also Abdullah v. U.S. Sec. Assocs.,* 731 F.3d 952, 957 (9th Cir. 2013) (commonality focuses on whether there are common issues of fact or law among class members and whether a class action will "generate common answers apt to drive the resolution of the litigation."). Although, "for purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores* 564 U.S. at 359 (internal citation, quotation marks, and brackets omitted). "What matters to class certification is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350.

Here, the commonality requirement is satisfied for settlement purposes because Plaintiffs contend their allegations arise from the same common nucleus of operative facts, and Plaintiffs contend all members of the proposed Settlement Class will rely upon the same common evidence to prove their claims. Plaintiffs contend the common issues include: whether the terms of IBM's standardized IPLs comply with California law governing earned commission wages; whether IBM's standardized IPLs comply with Cal. Labor Code 2751; whether IBM paid less to the Class and Subclass Members than the formulas in the IPLs provided for; whether IBM should be ordered to disgorge all or part of the ill-gotten profits it received by not paying its sales representatives in accordance with their commissions formulas; whether the Class and Subclass are entitled to damages and the amount of damages; and the amount of formulaic damages due to each member of the Classes.  For purposes of this Settlement only, IBM will not dispute Plaintiffs' contentions regarding the commonality requirement.[3] IBM reserves all of its rights to challenge commonality if the Settlement is not finalized and approved. Thus, in this case, a "class-wide proceeding [will] generate common answers apt to drive the resolution of the litigation." *Id.* at 350.

---

[3] IBM agrees to a class only for purposes of the settlement agreement.

### 3.    Plaintiffs' claims are typical of the claims of the Settlement Class.

The third prerequisite set forth in Rule 23(a)(3) for class certification is "typicality," which requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (*quoting* Fed. R. Civ. P. 23(a)(3)). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020.

Plaintiffs contend their claims arise from the same common alleged act by IBM (capping commissions and not having a contract) and from the same alleged legal theories as the claims of the Settlement Class and Subclass Members. Here, Plaintiffs seek redress—on behalf of the Settlement Class Members—for alleged damages arising out of a similar alleged act.   Thus, Plaintiffs contend that they and Class and Subclass Members have an identical interest in recovering their alleged losses sustained as a result of the same course of conduct.   For purposes of this Settlement only, IBM will not dispute Plaintiffs' contentions regarding the typicality requirement, but IBM reserves all of its rights to challenge this aspect if the Settlement is not finalized and approved.

### 4.    Comin will Fairly and Adequately Represent the Settlement Class.

The fourth and final prerequisite under Rule 23(a) is "adequacy of representation." Fed. R. Civ. P 23(a)(4). "Adequacy of representation" is met where, as here, the representatives: (1) have common, and not antagonistic, interests with unnamed members of the class, and (2) will vigorously prosecute the interests of the class through qualified counsel." *See Amchem Prods., Inc.*, 521 U.S. at 625-26; *see also Hanlon*, 150 F.3d at 1020. Regarding the adequacy of plaintiffs' counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Here, the proposed Class Representative in this Action claims that he had his commissions capped by IBM and thus allegedly suffered injury or loss. The proposed Class Representative seeks

10

to maximize the recovery to the Settlement Class through this litigation. Comin contends that he has no interest that is antagonistic to the claims of any Settlement Class Member and that his interests are aligned with the interests of Settlement Class Members. Moreover, Comin has vigorously prosecuted this action in the best interests of the Settlement Class. Comin understands his duty as representative of the Settlement Class and will dutifully execute his responsibilities. His active participation is strong evidence that he is an adequate representative of the Settlement Class.

Likewise, Class Counsel have vigorously represented Comin and putative Settlement Class/Subclass Members in this Action. They represent that they will continue to do so and have submitted evidence showing that they are qualified, experienced, and generally able to conduct the litigation as detailed herein. *See* Lee Decl., Ex. B (Firm resume of Class Counsel). For purposes of this Settlement only, IBM will not dispute Plaintiffs' contentions regarding this requirement, but IBM reserves all of its rights to challenge this aspect if the Settlement is not finalized and approved.

## B.    THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED

Once the elements of Rule 23(a) are met, the Court must then look to Rule 23(b) to determine whether the plaintiff satisfies at least one of its three prongs. Under the Rule 23(b)(3) prong, a party may maintain a class action if two basic conditions are met. First, common questions [of law or fact] must *predominate* over individual issues. Second, the class action must be *superior* to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). Thus, "[w]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages." *Id*. When weighing the two conditions listed above, the Court may consider: (A) The class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. *Id*.

Plaintiffs contend that both predominance and superiority requirements are met here. IBM does not dispute that the requirements are satisfied for settlement purposes only but contends class certification would not otherwise be appropriate as it relates to the merits of Plaintiffs' claims.

### 1.    Common Questions Predominate

Rule 23(b)(3) provides that a party may maintain a class action if "the court finds that the questions of law and fact common to the members of the class *predominate* over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 452, 136 S. Ct. 1036, 1045 (2016). Rule 23(b)(3) overlaps with the requirements of Rule 23(a)—the plaintiffs must prove that there are "questions of law or fact common to class members" that can be determined in one stroke, *see Wal-Mart*, 564 U.S. at 349, in order to prove that such common questions predominate over individualized ones, *see Tyson Foods*, 577 U.S. at 453–54. Thus, courts must consider cases examining both subsections in performing a Rule 23(b)(3) analysis.

Here, Plaintiffs contend that they satisfy the predominance requirement because liability questions common to all Settlement Class and Subclass Members substantially outweigh any possible issues that are individual to each Settlement Class and Subclass Member. Plaintiffs contend the salient evidence necessary to establish Plaintiffs' claims are common to all the Class Representatives and all members of the Settlement and Subclass Class—they would all seek to prove that IBM capped their commissions and that IBM failed to have enforceable contracts. Plaintiffs contend that the evidentiary presentation changes little whether there are 100 Settlement Class Members or 500,000 Settlement Class Members. In either instance, Plaintiffs contend they would present the same evidence of IBM's commissions policies, including the lack of contract, and the same evidence of IBM's capping of their commissions. For purposes of this Settlement only, IBM will not dispute Plaintiffs' contentions regarding this requirement, but IBM reserves all of its rights to challenge this aspect if the Settlement is not finalized and approved. For these reasons, the Court should certify the Settlement Class and Subclass defined in the Settlement.

1

### 2. Class Treatment of Plaintiffs' Claims is Superior

2       In order to certify a class under Rule 23(b)(3), the Court must also determine "that a class

3 action is *superior* to other available methods for the fair and efficient adjudication of the

4 controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). "Where classwide litigation of common

5 issues will reduce litigation costs and promote greater efficiency, a class action may be superior to

6 other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

7 Superiority, therefore, rests on factors like individual class members' desire to bring individual

8 actions and the utility of concentrating the litigation in one forum. Fed. R. Civ. P. 23(b)(3).

9 Additionally, "[t]he superiority inquiry under Rule 23(b)(3) requires determination of whether the

10 objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*,

11 150 F.3d at 1023. "This determination necessarily involves a comparative evaluation of alternative

12 mechanisms of dispute resolution." *Id.*

13       Here, Plaintiffs contend that, if each member of the class pursued a claim individually, that

14 would run afoul of Rule 23's focus on efficiency and judicial economy. *See Vinole v. Countrywide*

15 *Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009). Further, litigation costs would likely "dwarf

16 potential recovery" for many of the class members if each class member litigated individually.

17 *Hanlon*, 150 F.3d at 1023. "[W]here the damages each plaintiff suffered are not that great, this factor

18 weighs in favor of certifying a class action." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180,

19 1198 n.2 (9th Cir. 2001) (*quoting Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 652 (C.D. Cal. 1996)).

20 Moreover, where parties agree to a proposed settlement, "the desirability of concentrating the

21 litigation in one forum is obvious." *Monterrubio v. Best Buy Stores*, 291 F.R.D. 443, 452 (E.D. Cal.

22 2013) (citation omitted).

23       Plaintiffs further contend that a class action will achieve economies of scale for the Class

24 and Subclass, conserve judicial resources, avoid repetitive proceedings, and prevent inconsistent

25 adjudications. Accordingly, Plaintiffs contend litigating the predominant legal questions in one

26 forum makes sense.

27       The fact that the Parties have reached a settlement also weighs in favor of a finding that the

28 class mechanism is superior. *See Amchem Prods.*, 521 U.S. at 619-20 (1997) ("settlement is relevant

13

to a class certification" and can alleviate manageability concerns that otherwise may arise).  Indeed, the *Newberg* treatise explains that in some cases a:

> [c]lass might not have been certified were it not for the proposed class settlement. This observation does not mean that Rule 23 criteria were not applied strictly in these circumstances.  On the contrary, these tests were applied, and the observation that a different ruling might have resulted in the absence of the settlement offer refers to the fact that Rule 23 criteria would have been applied in a different context and thus might have led to a different result.

4 *Newberg* § 11.27 at 56 (footnote omitted).

For purposes of this Settlement only, IBM will not dispute Plaintiffs' contentions regarding this requirement, but IBM reserves all of its rights to challenge this aspect if the Settlement is not finalized and approved.  The proposed Settlement Class and Subclass therefore meets the requirements of Rule 23(b)(3) and should be conditionally certified for purposes of settlement only.

## C.    THE CLASS IS ASCERTAINABLE

"Although there is no explicit requirement concerning the class definition in Fed. R. Civ. P. 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679–80 (S.D. Cal. 1999). "A class definition should be 'precise, objective and presently ascertainable.'" *Rodriguez v. Gates*, 2002 WL 1162675, at *8 (C.D.Cal. May 30, 2002) (quoting *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D.Cal.1998)); *see also Manual for Complex Litigation, Fourth* § 21.222 at 270–71 (2004). That is, the class definition must be sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member. *See Xavier v. Philip Morris USA Inc*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011).  The proposed Class and Subclass satisfy these criteria.

Here, the proposed Class is based on objective criteria because it is defined to include all persons residing or who resided in California while working for IBM on a commissions incentive plan at any time between November 4, 2015 and the date of preliminary approval of the settlement by the Court.  Further, the Subclass is based on objective criteria because it is defined to include all persons residing or who resided in California while working for IBM on a commissions incentive plan at any time from November 4, 2015 and the date of preliminary approval of the settlement by

14

the Court and who Plaintiffs contend were not paid the amount of commissions reflected in the individual's commissions formula. While not identified as a class or subclass, the proposed PAGA Group is based on objective criteria because it includes all persons residing or who resided in California while working for IBM on a commissions incentive plan at any time between September 5, 2020 and the date of preliminary approval of the settlement by the Court. Individual, subjective inquiries to identify who may be a member of the Class, Subclass, or PAGA Group are unnecessary as long as the Settlement Class Member has resided or currently resides in California while working for IBM on a commissions incentive plan and did so during the class or PAGA periods.

## V.      THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

When parties reach a proposed classwide settlement, they must submit the settlement to the court for approval. Fed. R. Civ. P. 23(e); 2 H. Newberg & A. Conte, *Newberg on Class Actions* (4th Ed. 2002) ("*Newberg*") at § 11.41, p. 11-89. Preliminary approval is the first of three steps that comprise the approval process for class action settlements. The second step is the dissemination of notice of the settlement to class members. The third is a final settlement approval hearing, at which the parties may present evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement and the Court may hear class members regarding the settlement. *See, e.g., Bailey v. Rite Aid Corp.*, 4:18-cv-06926-YGR, ECF Nos. 157, 169 (June 14, 2022); *Beck-Elleman v. Kaz USA, Inc.*, 2013 WL 1748729 at *1 (S.D. Cal. Jan. 7, 2013); *Newberg*, at p. 11-89; *Manual for Complex Litigation*, Fourth, § 21.632-21.635 (2013).

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Campbell v. Facebook*, Inc., 951 F.3d 1106, 1121 (9th Cir. 2020); *Free Range Content, Inc. v. Google, LLC*, No. 14-CV-02329-BLF, 2019 WL 1299504, at *8 (N.D. Cal. Mar. 21, 2019). Moreover, as *Beck-Ellman* explained, "[t]he Ninth Circuit favors deference to the 'private consensual decision of the [settling] parties.' Particularly where the parties are represented by experienced counsel and negotiation has been facilitated by a neutral party—in this instance, a private mediator…" *Id*. at *16 (*quoting Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). Whether to approve a class action settlement is committed to the

15

sound discretion of the trial judge. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

Rule 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). Courts in the Ninth Circuit have traditionally used a multi-factor balancing test to analyze whether a given settlement is fair, adequate, and reasonable. *See*, *e.g.*, *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). That test includes the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Id.*; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "This list is not exclusive and different factors may predominate in different factual contexts." *Perks v. Activehours, Inc.*, No. 5:19-cv-5543-BLF, 2021 WL 1146038, at *4 (N.D. Cal. Mar. 25, 2021); *see also Officers for Justice*, 688 F.2d at 625 (9th Cir. 1982) ("The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."). Further, this District has established specific factors that guide whether a proposed settlement should be preliminarily or finally approved. *See* Procedural Guidance for Class Action Settlements.[4] "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness[, and] … the settlement must stand or fall in its entirety." *Officers for Justice,* 150 F.3d at 628, 630.

In addition to these factors, where "a settlement agreement is negotiated prior to formal class certification," the Court must also determine that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47

---

[4] Available at https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements (last visited June 30, 2022).

(9th Cir. 2011) (internal citations and quotations omitted). Accordingly, the Court must look for "explicit collusion" and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id*. at 947. "[S]uch signs include (1) when counsel receive a disproportionate distribution of the settlement ...; (2) when the parties negotiate a clear sailing arrangement providing for the payment of attorneys' fees separate and apart from class funds ...; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id*. (quotation marks omitted).

At this preliminary stage, and because class members will receive an opportunity to be heard on the settlement, "a full fairness analysis is unnecessary[.]" *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008). Instead, preliminary approval and notice of the settlement terms to the proposed class are appropriate where "[(1)] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [(2)] has no obvious deficiencies, [(3)] does not improperly grant preferential treatment to class representatives or segments of the class, and [(4)] falls with the range of possible approval[.]" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted); *see also Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2009) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on the Final Approval, after such time as any party has had a chance to object and/or opt out.") (emphasis in original).

A.   **RULE 23(E)(2)(A): THE CLASS REPRESENTATIVE AND CLASS COUNSEL HAVE ADEQUATELY REPRESENTED THE PROPOSED SETTLEMENT CLASS AND SUBCLASS.**

The Class Representative and Class Counsel have adequately represented the Class and Subclass. Plaintiffs have "actively participated in the prosecution of this case" including being deposed, responding to discovery requests, and producing requested documentation. *Norton v. LVNV Funding, LLC*, No. 18-cv-05051-DMR, 2021 WL 3129568, at *8 (N.D. Cal. July 23, 2021). Comin (and Briggs) also attended both mediation sessions and regularly stayed apprised of the litigation's process. Additionally, "[t]here are no indications that [Plaintiff has] failed to adequately represent the interests of the class." *Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, No. 19-

17

cv-07087-DMR, 2021 WL 1788447, at *10 (N.D. Cal. May 5, 2021). Comin has no conflicts with the other Settlement Class Members and has adequately represented the Settlement Class in the litigation. *See* Lee Decl., ¶¶ 10-11.

### B. RULE 23(E)(2)(B): THE SETTLEMENT WAS NEGOTIATED AT ARM'S LENGTH.

The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in analyzing whether to approve a class action settlement. *In re Hyundai & Kia Fuel Econ. Litig.,* 926 F.3d 539, 570 (9th Cir. 2019). The Class Settlement reached in this case has several indicia of an arm's length negotiation.

*First*, Plaintiffs and Class Counsel were well-apprised of the salient legal and factual issues before reaching the decision to settle the Action. *See Louie v. Kaiser Found. Health Plan, Inc.*, No. 08-cv-00795-IEG-RBB, 2008 WL 4473183, at *6 (S.D. Cal. Oct. 6, 2008) ("Class counsels' extensive investigation, discovery, and research weighs in favor of preliminary settlement approval."). Given that this case was subject to significant discovery prior to resolution, including additional pertinent documents and information being produced as part of the settlement discussions, Class Counsel was well informed regarding the merits and damages of the claims.

*Second*, the Parties agreed on a percentage of the Settlement Payment to allocate to attorneys' fees only after they agreed on the material terms of the relief to the class, including the total Settlement Payment amount. *See* Lee Decl., ¶ 19. Moreover, the settlement is not contingent on the award of Attorneys' Fees and Costs or the Service Award, which is indicative of a fair and arm's-length settlement process. *See* Fed. R. Civ. P. 23 advisory committee's note; *see also Sadowska v. Volkswagen Grp. of Am., Inc.*, No. 11-cv-00665-BRO-AGR, 2013 WL 9600948, at *8 (C.D. Cal. Sept. 25, 2013) (approving settlement and finding agreed fees and costs reasonable where "[o]nly after agreeing upon proposed relief for the Class Members, did the Parties discuss attorneys' fees, expenses, and costs").

*Finally*, the Settlement includes no evidence of collusion, even with the inclusion of a "clear sailing" agreement. Here, the presence of a "clear sailing" agreement, which the Ninth Circuit warned was a "subtle sign of collusion," does exist as part of the settlement agreement. *Kearney v.*

18

*Hyundai Motor America*, No. SACV 09-1298-JST (MLGx), 2012 WL 13049699 at *10 (C.D. Cal. Dec. 17 , 2012); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 946. However, "the 'clear sailing' arrangement is mitigated by the fact that …"the 'pot' was established before the parties agreed on a proposed amount in fees." *Kearney*, 2012 WL 13049699 at *10. Furthermore, the size of the "pot" is fixed, meaning that any amount not awarded in Attorneys' Fees will go to the class and not back to IBM. That shows lack of collusion. *See id.*

The absence of collusion is also supported by the fact that the mediation was conducted by a well-respected mediator who works for a well-regarded alternative dispute resolution services provider. *See id.* The Parties, represented by experienced counsel, engaged in the informal discovery needed to assess Defendant's potential liability, and they undertook hard-fought negotiations, culminating in two full-day mediation conferences with A. Lee Parks, including many phone calls among counsel between those two mediation sessions to break the impasse. The Ninth Circuit defers to the "private consensual decision of the parties" and emphasizes that the court's analysis "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *Rodriguez,* 563 F.3d at 965.

Ultimately, a settlement reached "in good faith after a well-informed arms-length negotiation" is presumed to be fair. *Fernandez v. Victoria Secret Stores, LLC*, No. 06 Civ. 04149, 2008 WL 8150856, at *4 (C.D. Cal. July 21, 2008). Further, "'[g]reat weight' is accorded to the recommendation of counsel [regarding the settlement], who are mostly closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

## C.     RULE 23(E)(2)(C): THE RELIEF FOR THE SETTLEMENT CLASS IS SUBSTANTIAL.

Each of the Class Members will receive $300. That amount is substantial because the Class Members include people whose commissions were never reduced, even though Plaintiffs contend they never had an enforceable contract with IBM. Because of that, IBM has argued in this case that such people could not state a claim against IBM because they had no damages; the Plaintiffs opposed

that, arguing that the lack of a contract (and the risk inherent in that) had some inherent value, and it does, but it is not more than a relatively modest amount. Indeed, with each six-month sales period that passed, the alleged risk borne by salespeople who had no contract but were paid the full commissions owed arguably dissipated, because the risk never came to fruition. However, those people did bear the alleged risk at the last pay period before they left IBM or during any approval of the settlement if they are still at IBM (that is, they bore the alleged risk during the last six-month period, where commissions had not yet been paid), which is why the settlement calls for the same flat amount of $300 to be paid to each Class Member, regardless of how long they worked for IBM. Put simply, the $300 represents the alleged risk that the Class Members bore during the last pay period by allegedly not having a contract with IBM, as Plaintiffs claimed is required by California law.

The payments to the Subclass Members—those people who Plaintiffs contend had their commissions reduced—are also substantial. Those people will receive a large percentage of the alleged reduction of their commissions, about 47% (and possibly more) of the amounts they were allegedly underpaid. Given the uncertainties inherent in this litigation, including IBM's claim that all of those reductions were proper, that represents a significant recovery. Moreover, even if those individuals pursued their claims individually, and even if they prevailed notwithstanding IBM's defenses, they would most likely wind up paying 1/3 of their recovery to their attorneys, plus costs, lowering their best chance of recovery from 100% to something less than 66%, which is not much more than the 47% being recovered here.

The $50,000 payment to the PAGA Group is also substantial. The $200,000 total payment on which that $50,000 is based reflects a large percentage of what IBM claims would be the maximum penalties recoverable even if Plaintiffs were able to prevail at trial, as noted above.

### a. Rule 23(e)(2)(C)(i): The costs, risks, and delay of trial and appeal.

"In assessing 'the costs, risks, and delay of trial and appeal'" under Rule 23(e)(2)(C)(i), "courts in the Ninth Circuit evaluate 'the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status

throughout the trial.'" *Wong*, 2021 WL 1531171, at *8 (quoting *Hanlon*, 150 F.3d at 1026). In evaluating these factors, the Court should "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). "In this respect, '[i]t has been held proper to take the bird in hand instead of a prospective flock in the bush.'" *Id.* "Here, as with most class actions, there was risk to both sides in continuing towards trial." *Chester v. TJX Companies, Inc.*, No. 5:15-cv-01437-ODW-DTB, 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). "The settlement avoids uncertainty for all parties involved." *Id.*

When both sides face significant uncertainty, the attendant risks favor settlement. *Hanlon*, 150 F.3d at 1026 (9th Cir. 1998). While Plaintiffs believe they have meritorious claims, they are also cognizant that the Classes face significant procedural, liability, and damages risks moving forward.

Undoubtedly the expense incurred by Plaintiffs and the purported class will increase if the case progresses. This action has yet to proceed to summary judgment. Thus, if settlement were not reached, Plaintiffs and potential class members would likely incur additional costs in conducting further discovery, defending or bringing summary judgment motions, and, if applicable, preparing for and participating in trial. *See* Lee Decl., ¶ 17. The Settlement provides a substantial and immediate benefit to the class which is "preferable to lengthy and expensive litigation with uncertain results." *Morales v. Stevco, Inc.*, No. 09-00704, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011) (citation omitted).

### b.   Rule 23(e)(2)(C)(ii): The effectiveness of the proposed method of distributing relief is adequate.

Pursuant to the settlement terms, Class and Subclass Members do not need to return a Claim Form. Courts have specifically found that where the Class and Subclass Members do not need to return a claim form, the "process is not unduly demanding, and … the proposed method of distributing relief … is effective." *Vigueras v. Red Robin Int'l, Inc.*, No. SACV171422JVSDFMX, 2020 WL 13042722, at *7 (C.D. Cal. July 22, 2020); *see also Herrera v. Wells Fargo Bank, N.A.*,

21

No. SACV 18-332JVS(MRWX), 2021 WL 3932257, at *11 (C.D. Cal. June 8, 2021). The same principle applied for PAGA Group Members who did not need to submit a claim form. *See Vigueras,* 2020 WL 13042722, at *7.

### c.   Rule 23(e)(2)(C)(iii): The terms and timing of the proposed award of Attorneys' Fees and Costs are fair and reasonable.

The terms and timing of the proposed award of Attorneys' Fees and Costs are also fair and reasonable. Class counsel will seek approval of Attorneys' Fees and Costs in an amount not to exceed $1,617,729.71, and IBM has agreed to pay the amount the Court approves. Courts within the Ninth Circuit often approve an award of attorneys' fees up to 33%, and the maximum sought here is 33% of the total. *See, e.g.*, *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-CV-2335-GPC-MDD, 2020 WL 520616, at *7 (S.D. Cal. Jan. 31, 2020) (collecting cases). Moreover, the Parties agreed on a percentage of the Settlement Payment to allocate to attorneys' fees only after they agreed on the material terms of the relief to the class, including the total Settlement Payment amount. The Parties agree that regardless of any action taken by the Court or any appellate court with respect to Class Counsel Fees and Costs, the validity of the underlying Settlement shall not be affected. Therefore, the terms and timing of the proposed fees award is fair and reasonable because the effectiveness of the Settlement and the releases are not contingent on the Court's approval of the Fee and Expense Award or determined by the amount of the Fee and Expense Award approved by the Court. Further, the amount of any attorneys' fees or costs sought but not awarded shall become part of the Net Settlement Amount to be distributed to Class Members.

### d.   Rule 23(e)(2)(C)(iv): There are no supplemental agreements.

The Parties have no agreements other than the Settlement Agreement. *See* Lee Decl., ¶ 9.

### D.   RULE 23(E)(2)(D): THE SETTLEMENT TREATS SETTLEMENT CLASS MEMBERS AND SUBCLASS MEMBERS EQUITABLY RELATIVE TO EACH OTHER.

The Settlement does not grant preferential treatment to the Representative Plaintiffs, who will share in the Net Settlement Payment on the same terms as all other Class Members. Although the Representative Plaintiffs can apply for enhancement payments, the Settlement is not contingent on the Court granting those awards. Class and Subclass Members are not required to submit claims

1   or take any other affirmative action to receive their shares of the settlement, which will result in a

2   much higher percentage of the Classes receiving money under the Settlement than would be the case

3   if some affirmative step were required. Therefore, Plaintiffs request that this Court find in favor of

4   preliminary approval.

5   **VI.      PRELIMINARY APPROVAL OF CLASS NOTICE & FORM**

6           "[C]ourts must direct notice in a reasonable manner to all class members who would be

7   bound by" the proposed settlement. Fed. R. Civ. P. 23(e)(1). A settlement must also provide absent

8   class members with the "best notice that is practicable under the circumstances." Fed. R. Civ. P.

9   23(c)(2)(B). To satisfy due process, notice must "generally describe[] the terms of the settlement in

10  sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be

11  heard." *Churchhill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

12          Specifically, the Notice must be written in "plain, easily understood language and concisely

13  state: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class aims, issues,

14  or defenses; (iv) that a class member may enter an appearance through an attorney if the member so

15  desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the

16  time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on

17  members under Rule 23(c)(3)." Fed. R. Civ. P 23(c)(2)(B).

18          "District courts have 'broad power and discretion vested in them by [Rule 23]' in

19  determining the parameters of appropriate class notice." *Chinitz v. Intero Real Est. Servs.*, No. 18-

20  CV-05623-BLF, 2020 WL 7042871, at *2 (N.D. Cal. Dec. 1, 2020). The Federal Judicial Center

21  states that a publication notice plan that reaches 70% of class members is one that reaches a "high

22  percentage" and is within the "norm." Barbara J. Rothstein & Thomas E. Willging, *Federal Judicial*

23  *Center*, "Managing Class Action Litigation: A Pocket Guide or Judges," at 27 (3d ed. 2010).

24          Additionally, the Class Notice forms used in this matter are designed to be "noticed,"

25  reviewed, and—by presenting the information in plain language—understood by Settlement Class

26  Members. A copy of the Class Notice is attached to the Lee Declaration as Exhibit C. The Class

27  Notice forms contain plain-language summaries of key information about Settlement Class

28  Members' rights and options.  Consistent with normal practice, prior to being delivered and

23

published, all Class Notice documents will undergo a final edit for accuracy. The Class Notice effectively communicates key information about the Settlement and is designed to alert the reader that the Class Notice is an important document and that the content may affect them. Moreover, the Notice provides the best notice practicable under the circumstances, and it informs potential class members of the settlement amount, the basis of the lawsuit, the definition of the class, the procedure for and consequences of opting-out of the settlement, the procedure for and consequences of objecting to or obtaining exclusion from the settlement, and the date of the final fairness hearing.

Further, any Class Member who does not opt out of the Settlement may object to the Settlement. The Class Notice shall provide that Class Members who wish to object to the Settlement must mail or file a written statement of objection to the Clerk of the Court. To be considered, the objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection. Furthermore, the objections must be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, or by filing them in person at any location of the United States District Court for the Northern District of California, and be filed or postmarked on or before the Response Deadline. The Parties may file with the Court written responses to any filed objections together with their motion for final approval of the settlement prior to the Final Settlement Hearing. Class Members who fail to submit written objections in the time and manner specified herein shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement, and the Settlement shall be fully binding upon them (unless they timely opt out).

Accordingly, the Notice Plan will provide full and proper notice to Settlement Class and Subclass Members before the claims, opt-out, and objection deadlines. This Notice Plan provides Settlement Class and Subclass Members due process and is the best notice practicable under the circumstances, in full compliance with Rule 23 of the Federal Rules of Civil Procedure.

Moreover, the Parties have agreed to engage KCC Class Action Services, LLC ("KCC") as the notice provider and Settlement Administrator. The Parties solicited and received four competing

proposals, each of which were based on the same methods of notice and claims payment that is reflected in this motion. The Parties reviewed each of the proposals and mutually selected KCC.

KCC is well-qualified to serve as the Settlement Administrator for this case.  KCC is a class action administration firm that provides class action services, including claims administration, legal notification, email and postal mailing campaign implementation, website design, call center support, class member data management, check and voucher disbursements, tax reporting, settlement fund escrow and reporting, and other related services critical to the effective administration of class action settlements. KCC has more than thirty years of industry experience, and has efficient and secure methods in place to handle the voluminous data and mailings associated with the noticing and disbursement requirements of class action matters to ensure the orderly and fair treatment of class members and all parties in interest. KCC has served as the administrator across a wide range of practice types, including insurance coverage,  securities, antitrust, consumer, employment, and government.  A class action services resume for KCC is attached as Exhibit D to the Lee Declaration. Further, a list of cases for which KCC served as the settlement administrator in which Class Counsel served as the counsel of record is attached as Exhibit E to the Lee Declaration.

KCC, moreover, has procedures in place for secure handling of class member data. According to information provided by KCC, through its parent company Computershare, the company has developed a comprehensive global information and cyber security framework. Computershare has an Information Security Policy Framework (ISPF) that applies to all Computershare business units in all geographic locations. KCC, through Computershare, utilizes access controls, physical and environmental controls, communications security, and authentication and authorization mechanisms and processes that are commensurate with the criticality of the Computershare IT system.  KCC's cryptographic solutions protect data in transit and at rest utilizing industry-recognized leading practices to implement strong encryption for authentication and transmission of information; and a defense-in-depth program to protect its information and IT systems from existing and emerging threats. Employee screening, annual mandatory training, and employee termination/departure procedures are also standard  protocols. The Information Security

team actively  monitors the internal and external threat environment to  ensure that the current security controls deployed are both appropriate and effective.

Lastly, IBM will separately pay the costs of settlement administration, so costs of settlement administration have no impact on the Settlement Payment.

Therefore, the Settlement's plan for directing notice to class members satisfies Rule 23(c)(2)(B) and should be approved. *See, e.g., Wright v. Linkus Enter., Inc.*, 259 F.R.D. 468, 475 (E.D. Cal. 2009); *Misra v. Decision One Mortg. Co.*, No. 07-0994, 2009 WL 4581276, *9 (C.D. Cal. Apr. 13, 2009).

## VII.    THE COURT SHOULD APPROVE THE PAGA ALLOCATION

Under California Labor Code section 2699(l), the Court must also "review and approve any penalties sought as part of a proposed settlement agreement" of PAGA claims. There is "no requirement," however, that the Court "certify a PAGA claim for representative treatment," as in a class action. *Villalobos v. Calandri Sunrise Farm LP* (C.D. Cal., July 22, 2015) 2015 WL 12732709, at *5. Rather, the Court must conclude that the PAGA relief provided is "genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public." *Id.* at *13. When PAGA claims are settled, courts "consider whether the proposed PAGA settlement is fair and adequate in view of the purposes and policies of the statute[]" and "[t]hose purposes and policies include benefit[ting] the public by augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1132-33 and 1135 (N.D. Cal. 2016).  It is clear that the purpose of the PAGA statute is not to generate revenue for the State, but rather, to facilitate the enforcement of the labor laws. *See, e.g., Williams v. Superior Court* (2017) 3 Cal. 5th 531, 546; *Arias v. Superior Court* (2009) 46 Cal.4th 969, 986; Cal. Lab. Code § 2699(i).

In assessing the adequacy of the recovery under a PAGA claim, the focus is not the amount which the LWDA and the aggrieved employees are to receive formally in the form of monetary civil penalties, but instead, whether the total settlement amount achieves the PAGA's objectives.  A "[c]ourt does not review the PAGA allocation in isolation, but rather reviews the settlement as a whole, to determine whether it is fundamentally fair, reasonable and adequate, with primary

26

consideration for the interests of absent class members." *O'Connor v. Uber Techns.*, No. 13-CV-03826-EMC, Docket No. 736 (N.D. Cal. July 29, 2016). Although the settlement must be reasonable in light of the potential value of the claims, it may be substantially discounted given that courts often exercise their discretion to award PAGA penalties below the statutory maximum even where a claim succeeds a trial. *See Soriano v. Flagship Facility Servs., Inc.* (Mar. 20, 2019) Order After Hearing on March 15, 2019 at 10, Cal. Super. Ct. No. 17-CV-316438, citing *Viceral v. Mistras Group, Inc.* (N.D. Cal., Oct. 11, 2016) 2016 WL 5907869, at *8-9.

Here, the overall relief obtained by way of the Settlement is significant, not only from a monetary perspective, but also, from the perspective of deterring noncompliance with (and thereby, facilitating enforcement of) California labor laws.  Under the Settlement, the amount of $200,000 has been allocated as the PAGA Penalties Amount, of which seventy-five percent (75%), or $150,000, will be paid to the LWDA (*i.e.,* LWDA Payment), and the remaining twenty-five percent (25%) will remain as part of the Net Settlement Amount to be distributed to Settlement Class Members. This is a reasonable allocation and the Settlement fulfills the public policy objective of providing redress to aggrieved employees, providing funds to the State for enforcement of labor laws, and promoting enforcement through deterrence.

## VIII.  SETTLEMENT CONFORMS TO THE PROCEDURAL GUIDANCE FACTORS FOR CLASS ACTION SETTLEMENTS

The Northern District of California's Procedural Guidance for evaluating class action settlements applies here. Each of the Guidance factors supports preliminary settlement approval.

### A.  GUIDANCE 1A-B: DIFFERENCES

Section 1 of the Guidance requires discussion about any differences between the Settlement Class and the class proposed in the operative complaint. Here, the Proposed Settlement Class and Subclass does not differ from that described in the operative complaint. There are also no differences between the claims released and the claims in the operative complaint.

27

**B.     GUIDANCE 1C-D: THE PROPOSED SETTLEMENT PROVIDES A FAVORABLE RECOVERY AND FALLS WITHIN THE RANGE OF APPROVABILITY**

The Guidance requires comparative analysis of the anticipated Settlement Class recovery and the potential class recovery if the named Plaintiffs fully prevailed on their claims, and an explanation of why the amounts differ, as they almost always will in any large class action settlement. As described above, Plaintiffs' Counsel reviewed numerous documents to evaluate the potential damages in this case prior to entering into the settlement agreement and considering the settlement amount in light of the best interests of the Settlement Class. *See Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 963 (9th Cir. 2009*)* (court should consider "the experience and views of counsel"); *Sandoval Ortega v. Aho Enterprises, Inc.*, 2021 WL 5584761, *8 (N.D. Cal. Nov. 30, 2021) ("The experience and views of counsel weigh in favor of approving the settlement.").

The anticipated recovery under the settlement is roughly $2,750,000, after estimated attorneys' fees and costs, Enhancement Payments, and the PAGA Payments. Plaintiffs contend that the potential class recovery if plaintiffs had fully prevailed on all of their claims is about $300 each for the Class Members and $5,222,458.67 for the Subclass Members. The differences between the amounts of the settlement and the amounts of full recovery is based on the risks associated with further litigation. The Parties are not aware of any other pending cases that will be affected by the settlement.

**C.     GUIDANCE 1E-F: ALLOCATION PLAN MERITS PRELIMINARY APPROVAL**

The proposed allocation plan for the Settlement Payment is: (1) $200,000 PAGA Penalty Payment ($150,000 to the LWDA and $50,000 to the PAGA Group); (3) $10,000 to Briggs and $10,000 to Comin as Enhancement Payments; and (4) $4,530,000 to the Class Members and to Plaintiffs' Counsel (as attorney's fees and costs).

There is no claim form in this case.

**D.     GUIDANCE 1G: REVERSIONS**

There are no circumstances under which money originally designated for the class recovery will revert to IBM. If there is less than $50,000 left after all of the initial payments to Class Members,

28

1   to Subclass Members, for PAGA, and for fees and costs are made, the balance will go to cy pres

2   recipient the State Bar of California Justice Gap Fund.

3       **E.      GUIDANCE 2: THE PROPOSED SETTLEMENT ADMINISTRATOR**

4           The Parties have agreed to engage KCC as the notice provider and Settlement Administrator.

5   See discussion above in Section V regarding the selection process, etc., and KCC's procedures for

6   securely handling class member data.

7       **F.      GUIDANCE 3: PROPOSED NOTICES TO SETTLEMENT CLASS ARE
            APPROVABLE**
8
            See discussion in Section III.G and V. above.
9
        **G.      GUIDANCE 4 AND 5: OPT-OUTS AND OBJECTIONS**
10
            See discussion above regarding the settlement agreement's inclusion of opt-out and
11
    objection procedures.
12
        **H.      GUIDANCE 6: THE ANTICIPATED ATTORNEYS' FEES AND EXPENSES
13              REQUEST**

14          This will be further explained in Plaintiffs' forthcoming Motion for Attorneys' fees and

15  expenses but is addressed in Section III.F above.

16      **I.      GUIDANCE 7: THE PROPOSED SETTLEMENT AND PROPOSED
            ENHANCEMENT PAYMENTS DO NOT UNJUSTLY FAVOR ANY CLASS
17          MEMBERS, INCLUDING NAMED PLAINTIFFS**

18          Plaintiffs' Counsel is requesting Enhancement Payments of up to $10,000 for each Plaintiff.

19  In determining if a settlement improperly grants preferential treatment to named Plaintiffs, the Court

20  may consider "the actions the plaintiff has taken to protect the interests of the class, the degree to

21  which the class has benefitted from those actions, [and] the amount of time and effort the plaintiff

22  expended in pursuing the litigation." *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003); *see

23  also In re Magsafe Apple Power Litig.*, No. 5:09-CV-01911-EJD, 2015 WL 428105, at * 15 (N. D.

24  Cal. Jan. 30, 2015) (same). As noted above, Plaintiffs have taken significant steps to protect the

25  interests of the class and subclass, the class and subclass have benefitted because a settlement was

26  reached, and Plaintiffs have spent extensive time pursuing this litigation.

27          Finally, the Court must determine if a conflict exists where the incentive award is

28  conditioned on the class representative's approval and support of the Settlement. *See Radcliffe*, 715

                                            29

F. 3d at 1161. Here, the Proposed Settlement is not conditioned on approval of any Enhancement Payment, and the proposed Enhancement Payments are not conditioned on the Named Plaintiffs' support of the Settlement. The proposed maximum Enhancement Payment also is well within the approvability range. "Incentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (collecting cases). These facts strongly support a finding that the Settlement does not grant preferential treatment to the Named Plaintiffs and that $10,000 is an appropriate amount.

### J.   GUIDANCE 8: CY PRES RECIPIENTS

The Parties have agreed to designate the State Bar of California Justice Gap Fund (the "Justice Gap Fund") as the cy pres awardee. The Justice Gap Fund is related to the subject matter of the lawsuit because the claims deal directly with California worker rights. The Justice Gap Fund identifies      worker      rights      as      a      primary      focus      of      its      advocacy      efforts. https://www.calbar.ca.gov/Access-to-Justice/Legal-Services-Trust-Fund-Program/Justice-Gap-Fund ("The Justice Gap Fund helps the public in many ways, including: … protecting the rights of consumers and workers to avoid fraud and exploitation."). The Parties are not aware of any relationship that they or their counsel have with the Justice Gap Fund.

### K.   GUIDANCE 9: PROPOSED TIMELINE

In connection with preliminary Settlement approval, the Court must set dates for a number of related proceedings and events. The Parties suggest the following schedule:

- Deadline to submit opening briefs and supporting documents in favor of Final Approval of the Settlement: fourteen days after the Response Deadline.
- Deadline to submit opening briefs and supporting documents for Motion Fee and Expense Award and for Service Awards: fourteen days prior to the Response Deadline.
- Final Fairness Hearing Scheduled at the Court's discretion.

### L.   GUIDANCE 10: CLASS ACTION FAIRNESS ACT

As required by Section 10 of the Guidance, and the Class Action Fairness Act, 28 U.S.C. § 1711, *et seq.*, the Settlement Administrator will serve notice of the Settlement and other required

documents upon the appropriate government officials and provide proof of service prior to the Final Approval hearing.

**M.     GUIDANCE 11: PAST COMPARABLE SETTLEMENTS**

Past comparable settlements simply do not exist in this instance. This case brings a novel theory under Section 2751, and the Parties are not aware of another comparable case.

**IX.     CONCLUSION**

For the foregoing reasons, the Parties respectfully request that the Court grant the Motion for Preliminary Approval of the Settlement and for certification of the proposed Settlement Class for settlement purposes only and enter the proposed Preliminary Approval Order.

Respectfully submitted, this the 22nd day of August, 2022.

Dated: August 22, 2022                    MILBERG COLEMAN BRYSON
                                          PHILLIPS GROSSMAN, PLLC


                                          By:/s/ Matthew E. Lee
                                              Matthew E. Lee

                                          Attorneys for Plaintiffs

                                          MARK COMIN AND MARK BRIGGS

Dated: August 22, 2022
                                          JONES DAY


                                          By:/s/ Cindi L. Ritchey
                                              Cindi L. Ritchey

                                          Attorneys for Defendant

                                          INTERNATIONAL BUSINESS MACHINES
                                          CORPORATION

## <u>SIGNATURE ATTESTATION</u>

I, Cindi Ritchey, hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.


Dated: August 22, 2022


By: <u>*/s/ Cindi Ritchey*</u>
Cindi Ritchey

Attorney for Defendant