Matthew E. Lee*
Jeremy R. Williams*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
mlee@milberg.com
jwilliams@milberg.com

Counsel for Plaintiffs
* admitted *pro hac vice*

[ADDITIONAL COUNSEL LISTED ON NEXT PAGE]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK COMIN and MARK BRIGGS, on behalf of themselves and all others similarly situated,<br>Plaintiffs,<br>v.<br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br>Defendant. | **Case No. 3:19-cv-07261-JD**<br><br>**SUPPLEMENTAL JOINT MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED CLASS SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF CLASS NOTICE AND INCORPORATED MEMORANDUM OF LAW**<br><br>Date: December 1, 2022<br>Time: 10:00 AM<br>Courtroom: 11 |

1
JOINT SUPPLEMENTAL MOTION FOR PRELIMINARY APPROVAL

Matthew E. Lee*
Mark R. Sigmon*
Jeremy R. Williams*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
mlee@milberg.com
msigmon@milberg.com
jwilliams@milberg.com

Alex R. Straus (SBN: 321366)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 Beverly Hills Drive
Beverly Hills, CA 90212
Telephone:     917-471-1894
Facsimile:     310-496-3176
astraus@milberg.com

Kent A. Bronson*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
100 Garden City Plaza
Garden City, NY  11530
Telephone:  (212) 594-5300
Facsimile: (212) 868-1229
kbronson@milberg.com

*Attorneys for Plaintiffs*

Aaron L. Agenbroad (State Bar No. 242613)
alagenbroad@jonesday.com
**JONES DAY**
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: +1.415.626.3939
Facsimile: +1.415.875.5700

Cindi L. Ritchey (State Bar No. 216899)
critchey@jonesday.com
**JONES DAY**
4655 Executive Drive, St. 1500
San Diego, CA 92121
Telephone: +1.858.314.1200
Facsimile: +1.844.345.3178
Email: critchey@jonesday.com

Justin Barnes*
**JACKSON LEWIS**
171 17th Street, NW, Suite 1200
Atlanta, GA 30363
Telephone: (404) 525-8200
Email: Justin.barnes@jacksonlewis.com

*Attorneys for Defendant*

*Admitted pro hac vice

**TO THE COURT, ALL PARTIES, AND ALL COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 1, 2022 at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 11, 19th Floor, before the Honorable James Donato, Plaintiffs Mark Comin and Mark Briggs (collectively, "Plaintiffs") and Defendant International Business Machines Corporation ("IBM") respectfully move this Court for preliminary approval of the class action Settlement reached in this case, the terms of which the Parties describe more specifically below, in addition to the Memorandum of Points and Authorities in support of the parties Joint Motion for Preliminary Approval (Dkt No. 126).

The Parties request that the Court enter the proposed Preliminary Approval Order and:

1. Preliminarily approve the Settlement;
2. Appoint Mark Comin as the Class Representative and Briggs as the PAGA Representative;
3. Appoint Milberg Coleman Bryson Phillips Grossman, PLLC as Settlement Class Counsel;
4. Certify the Class and Subclass for settlement purposes only;
5. Approve the proposed Notice of Class Action Settlement ("Class Notice")(attached as Exhibit A hereto) and direct the mailing and emailing of the Class Notice to the Class and Subclass; and
6. Schedule a Final Approval Hearing.

The Parties base the motion on the following documents: this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Notice of Motion and Motion at Dkt No. 126, the Memorandum of Points and Authorities at Dkt No. 126, the Settlement Agreement, the pleadings, record, and other filings in the case; and the other oral and written points, authorities, and evidence that the parties presented at the October 6, 2022 hearing on the Motion at Dkt No. 126.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

At the October 6, 2022 hearing on the Parties' Joint Motion for Preliminary Approval of the settlement in this litigation, the Court asked the Parties to submit a supplemental brief addressing the following four issues:

1. Providing notice of the proposed settlement to Class Members via email with U.S. mail as a supplemental form of notice;
2. The scope of the proposed release of claims, specifically with respect to Labor Code Sections 201-204, 226, 226.3, 558, 1174, 1194, 1197, 1197.1, 1198, and 2698 et seq.;
3. The proposed deadlines for class members to object to or opt out of the settlement and for class counsel to file any motion for attorneys' fees; and
4. Whether payments could be made via direct deposit to current employees.

The Parties address these issues in turn below.

## II.   SUPPLEMENTAL INFORMATION IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

### A.   **Notice to Class Members Via Email.**

In response to the Court's preference that email be the primary form of notice, with U.S. mail as a supplemental form of notice (*see* Minute Order (Dkt. 129)), the parties state that they have agreed to provide notice not only by U.S. mail as specified in the Settlement Agreement, but also via email to the class members' last known personal email addresses where available. IBM notes that it does not regularly maintain personal email addresses of employees in the ordinary course of business. IBM will conduct a diligent search of its HR system of record and provide last known personal email addresses, where available, as part of the Confidential Class List provided to the Settlement Administrator under the Settlement Agreement. For any Class Members for whom IBM could not locate a personal email address in its records, the Settlement Administrator will conduct an email append search using that Class Member's name and last known address as provided in the Confidential Class List. Email address appending searches use names and physical addresses to search for email addresses that match the individual's name and physical address in content

databases sourced from lawfully collected consumer-provided data. The Settlement Administrator will send an account ping test to the email address's service provider to check that it is valid and accepting messages as part of this process. IBM will separately pay for the additional costs incurred by the Settlement Administrator for sending notice via email, including the costs of email appending services. The Parties propose that the email notice include the text of the class notice in the body of the email, with the subject line: "Comin et al. v. IBM: Class Action Settlement Notice." The Parties agree that providing notice via these methods –U.S. Mail and email—as described herein and in the Settlement Agreement, fulfills the requirements of Rule 23 of the Federal Rules of Civil Procedure.

IBM separately states that its agreement to provide notice by email is subject to the condition that notice will be provided by personal email addresses only so as not to disrupt IBM's business. *See, e.g., Thomas v. Kellogg Co.*, No. C13-5136 RBL, 2014 WL 12940041 (W.D. Wash. 2014) (recognizing that requiring a defendant to use its own email system would be "unusual, if not entirely unprecedented" and permitting notice via personal email addresses); *Chetwood v. T-Mobile USA, Inc.*, No. 2:19-cv-00458-RSL, 2021 WL 2206481 (W.D. Wash. 2021) (permitting notice via personal email addresses); *see also Hart v. U.S. Bank NA*, No. CV 12–2471–PHX–JAT, 2013 WL 5965637 (D. Ariz. 2013) (deeming mail notice sufficient because "it would be disruptive to send notice to potential opt-in plaintiffs via their Defendant provided work email address"); *Williams v. Coventry Health Care of Fla., Inc.*, No. 6:16-cv-731-Orl-41TBS, 2016 WL 7013530 (M.D. Fla. 2016) (requiring defendant "to disclose and allow for the use of work email addresses it provides to its employees is more intrusive than allowing Plaintiff to utilize personal email addresses").

### B. The Scope of the Proposed Release Is Proper

Under the Settlement Agreement, the proposed release of claims includes, among other things, claims based on California Labor Code sections 201-204, 226, 226.3, 558, 1174, 1194, 1197, 1197.1, 1198, 2698 et seq. that were "or could have been raised in the Action." As explained below, claims based on these sections can and should be released in addition to the claims raised in the operative complaint.

### 1. Claims Based on Labor Code Sections 201-204 Are In the Scope of the Action

California Labor Code Sections 201-203 govern the timing of the payment of wages upon termination of employment. Section[1] 201 sets forth timing provisions for the payment of final wages in the event of discharge, Section 202 governs the timing provisions in the event of an employee quitting (with and without notice), and Section 203 provides for the imposition of waiting time penalties for any willful failure to pay final wages of an employee within the timing parameters of Sections 201-202. Cal. Lab. Code §§ 201-203. Section 204, in turn, sets forth timing requirements for the payment of wages other than final wages. Notably, the proposed release of claims under Sections 201-204 is limited by the qualifying language to only those claims that "could have been raised in the Action." *See* Declaration of Matthew E. Lee, Ex. A at p. 32, § V(A) (Dkt. 126-1).

The thrust of Plaintiffs' complaint is that IBM failed to properly pay current and former IBM employees full commissions. *See* Consolidated Compl. (Dkt. 96), ¶¶ 1-6, 8, 29-30, 42, 45-46, 111-12, 121, 136, 142, 155. Commissions are "wages" within the meaning of the California Labor Code. *See* Cal. Lab. Code § 200. Plaintiffs therefore could have brought derivative claims under California Labor Code Sections 201-204 for failure to timely pay those wages during employment, and upon termination, in the Action.[2] Indeed, it is common practice in California for wage-hour class actions involving claims for unpaid wages to include derivative claims based on the same factual predicate, including claims for failure to timely pay wages under these Sections. *See, e.g., Ayala v. Coach, Inc.*, No. 14-CV-02031-JD, 2016 WL 9047148, at *3 (N.D. Cal. Oct. 17, 2016) (this Court approving a class settlement involving, among other claims, claims for unpaid wages and related derivative claims); *Ochoa v. McDonald's Corp.*, No. 3:14-CV-02098-JD, 2016 WL 3648550, at *8

---

[1] All "Section" references herein are to the California Labor Code unless otherwise indicated.

[2] IBM separately notes that it continues to deny all allegations in Plaintiffs' complaint and maintains that Plaintiffs and class members were properly paid all commission payments and that it did not engage in any unlawful conduct as alleged in the complaint. Thus, while Plaintiffs could have asserted claims under the Labor Code sections identified in the Release provision of the Settlement Agreement, IBM denies that the claims have merit or that Plaintiffs would have been entitled to any remedy or relief under those claims.

1  (N.D. Cal. July 7, 2016) (this Court concluding that derivative claims, including for failure to pay all wages due, will be "decided on a classwide basis" along with the claims based on the same factual predicate).  This is unsurprising as, relatedly, the doctrine of res judicata reflects the policy that a "party cannot by negligence or design withhold issues and litigate them in consecutive actions" – thus, the doctrine of res judicata recognizes that a party should assert all claims related to the subject matter that could have been raised because "[i]f the matter was within the scope of the action, related to the subject matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it."  *Villacres v. ABM Industries, Inc.*, 189 Cal. App. 4th 562, 576 (2010).

The law, moreover, is clear that a court may properly release derivative claims even if they are not expressly asserted in the complaint.  *See, e.g., Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) ("a federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action."); *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (2010) ("[a] settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action" where the released claim is "based on the identical factual predicate as that underlying the claims in the settled class action.").  In reaching its conclusion that a court could release claims not alleged in the complaint in *Class Plaintiffs*, the Ninth Circuit explained that "where a particular type of relief potentially available to the class members is compromised in the settlement process, it is mainly irrelevant whether or not that relief was specifically requested in the complaint" and "the breadth of negotiations is not necessarily strictly confined by the pleadings."  *Class Plaintiffs*, 955 F.2d at 1288.

As noted above, by the terms of the Settlement Agreement, the release of claims under Sections 201-204 is limited to those claims that could have been raised in the Action.  The Parties do not dispute that claims for alleged failure to timely pay all wages due during and upon termination of employment arising from the alleged failure to pay commission wages could have been raised in

the Action. Under longstanding Ninth Circuit authority, this Court thus may properly release them. *Class Plaintiffs*, 955 F.2d at 1287.

### 2. Claims Based On The Recordkeeping Requirements of Labor Code Sections 226, 226.3, and 1174 Are in the Scope of the Action.

Section 226 requires employers to provide accurate itemized wage statements showing, among other things, gross wages and net wages earned during the pay period, and Section 226.3 prescribes a civil penalty for violations of the recordkeeping requirements Section 226. Cal. Lab. Code §§ 226, 226.3. Similarly, Section 1174 requires employers to maintain accurate records of, among other things, wages paid to employees. Cal. Lab. Code § 1174(d). In cases such as this one involving alleged failure to pay wages, claims for violations of California's recordkeeping requirements are commonly included as derivative claims based on the predicate failure to pay wages. *See, e.g., Ochoa*, 2016 WL 3648550, at *8; *McCarty v. SMG Holdings, I, LLC*, No. 17-CV-06232-JD, 2022 WL 913092, at *7 (N.D. Cal. Mar. 29, 2022) (this Court declining to certify derivative wage statement claims because the underlying claims were not certified).

Again, under the Settlement Agreement, the release of claims under Sections 226, 226.3, and 1174 is limited by its terms to those claims that could have been raised in the Action. The Parties do not dispute that claims for failure to provide accurate wage statements and maintain accurate records of wages paid arise from the same subject matter of the action –i.e. the alleged predicate failure to properly pay all commission wages—and could have been brought in the Action as derivative claims. Accordingly, they are properly within the scope of the release. *Class Plaintiffs*, 955 F.2d at 1287; *Hesse*, 598 F.3d at 590.

### 3. Claims Based on Labor Code Sections 558, 1194, 1197.1, and 1198 Are in the Scope of the Action.

Sections 1194, 1197, 1197.1, and 1198 pertain to the payment of minimum wages as a condition of labor. Section 1194 provides that workers receiving less than the legal minimum wage are entitled to recover the unpaid balance of minimum wages. Cal. Lab. Code § 1194. Section 1197 provides that the payment of a wage lower than the minimum wage fixed by the IWC or other law is unlawful, and Section 1197.1 provides that an employer paying less than minimum wage will be

8
JOINT SUPPLEMENTAL MOTION FOR PRELIMINARY APPROVAL

subject to penalties, the restitution of wages, liquidated damages, and applicable penalties under Section 203. Cal. Lab. Code §§ 1197, 1197.1.  Section 1198, similarly, provides that the standard conditions of labor fixed by the IWC, such as the minimum wages that shall be paid, shall be the standard conditions of labor for employees. Cal. Lab. Code § 1198. Finally, Section 558 provides in relevant part that an employer violating any provisions regulating hours and days of work in any IWC Wage Order shall be subject to a civil penalty. Cal. Lab. Code § 558.

Derivative claims based on Sections 558, 1194, 1197, 1197.1, and 1198 could have been raised in the Action because, as explained above, Plaintiffs seek unpaid commissions—a form of wages—by way of their operative complaint. *See* Cal. Lab. Code § 200; *Schachter v. Citigroup, Inc.*, 47 Cal. 4th 610, 618 (2009) ("Incentive compensation, such as bonuses and profit-sharing plans, also constitute wages.").  Courts have permitted plaintiffs to use these Labor Code sections as bases to bring claims for alleged unpaid incentive compensation.  For example, in *Fuapau v. Lhoist N. Am. of Arizona, Inc.*, No. 20-CV-04404-VKD, 2022 WL 4451325, at *1 (N.D. Cal. Sept. 23, 2022), plaintiffs alleged that their employer "intentionally failed to pay its employees the full wages owed for overtime hours worked, nondiscretionary safety bonuses earned, and contractually promised shift premiums." The court ultimately granted final approval of the parties' settlement agreement releasing Sections 1194 and 1198 based on these allegations that plaintiffs were owed nondiscretionary safety bonuses, among other allegations. *Id.* at *11. As in *Fuapau*, this case also involves allegations that IBM failed to pay its employees the incentive compensation to which they were owed, and as such, these Labor Code provisions are implicated.

Indeed, courts have recognized that claims for unpaid commissions are broadly implicated by Labor Code sections generally concerning wages. Cf. *Nein v. HostPro, Inc.*, 174 Cal. App. 4th 833, 853 (2009) (court noting that "plaintiff's claim for commissions" falls within the terms of Labor Code sections [2926 and 206] concerning wages, because "it is undisputed that commissions are 'wages.'").  Provisions "regarding payment of wages are found generally at Lab. Code, §§ 200 et seq. and 1171 et seq." Cal. Civ. Prac. Employment Litigation § 4:20.  IWC wage orders further "govern certain matters regarding the payment of wages and the practice in a particular industry."

*Id*. Simply put, because Plaintiffs seek a form of unpaid wages, Labor Code Sections 558, 1197, 1197.1, and 1198 are relevant as governing the payment of wages. *See, e.g., Rivera v. Jeld-Wen, Inc.*, No. 21-CV-01816-AJB-AHG, 2022 WL 3702934, at *9 (S.D. Cal. Feb. 4, 2022) (denying defendant's motion to dismiss plaintiffs' claim for unpaid minimum wages under Sections 1194, 1197, and 1197.1 based on theory that they performed off the clock work, implicitly recognizing that the statutes go beyond governing simply the *amount* of minimum wages).

### 4. Claims Based on Labor Code Section 2698 Were Raised in the Action.

Labor Code Section 2698 et seq., is the California Labor Code Private Attorney General Act ("PAGA"). The release of claims under Section 2698 is proper because the operative consolidated complaint in this Action (Dkt 96) expressly asserts claims for violations of PAGA. *See* Cons. Compl., Fourth Claim for Relief (Violation of Private Attorney General Act, Labor Code § 2698, et seq.) ¶¶ 167-172, and seeks civil penalties and other relief under PAGA. *See id*., Prayer for Relief, ¶¶ 7-8. Because Section 2698 plainly falls within the scope of the four corners of the operative complaint and was in fact asserted as a separate claim for relief, it should be included in the release.

### C. Proposed Deadlines

At the October 6 hearing, the Court asked for a clearer proposed timeline for opting out of the settlement, objecting to the settlement, and filing subsequent motions for attorneys' fees and final approval. The Parties revised the proposed notice to include this information in a chart. Attached as Exhibit A is a clean version of the revised proposed notice, and Exhibit B reflects the redlined edits from the previously proposed notice. The proposed timeline is as follows:

| EVENT | DEADLINE |
|---|---|
| Object to or Opt Out of Settlement | [90 days after preliminary approval][3] |
| Class Counsel's Motion for Attorneys' Fees, Costs, and Incentive Awards | [60 after preliminary approval] |
| Object to Attorneys' Fees, Costs, and Incentive Awards | [95 days after preliminary approval] |

---

[3] This provides class members at least 60 days to object or opt out because the Settlement Administrator is required to issue notice to every individual on the Class List "[n]o later than 30 days after the Court's entry of an Order of Preliminary Approval..." Dkt No. 126-2, III.E.4.

| Class Counsel's Motion for Final Approval of the Settlement | [100 days after preliminary approval] |

### D. Direct Deposit Is Not Feasible.

As requested by the Court (Dkt No. 129), the Parties have considered the question of whether settlement payments could be made via direct deposit for current employees, and have determined that it is not feasible to do so. IBM is not administering the Settlement itself and will make no payments directly to class members. Rather, the Parties have mutually selected a third party Settlement Administrator, KCC, to be responsible for distributing notice and settlement payments to class members as well as handle the tax reporting associated with those payments. If the Court grants final approval of the Settlement, the Settlement Administrator will establish a Qualified Settlement Fund ("QSF") from which all settlement payments will be made. A QSF is registered with the IRS as a separate entity, and stands separate and independent from IBM. IBM will transfer to the Settlement Administrator the full amount of the Gross Settlement Payment, which the Settlement Administrator will deposit into the QSF. After the QSF is funded, IBM will have no involvement in the distribution of the settlement payments; rather, the QSF has sole control over the payment of the settlement funds in accordance with the terms of the Settlement Agreement. The QSF is also required to use its own EIN number for tax reporting associated with payments to class members, thus, all W-2 and 1099 statements issued to class members will be made from the QSF, not IBM. Because all settlement payments are to be made from the QSF (as well as all associated tax reporting), and not directly from IBM, it is not feasible to make settlement payments by direct deposit to employees.

### III. CONCLUSION

For the foregoing reasons, and those stated in the Joint Motion for Preliminary Approval (Dkt No. 126), and at the October 6, 2022 hearing, the Parties respectfully request that the Court grant the Motion for Preliminary Approval of the Settlement and for certification of the proposed Settlement Class for settlement purposes only and enter the proposed Preliminary Approval Order.

Respectfully submitted,

| | | |
|---|---|---|
| Dated: October 20, 2022 | | MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC |
| | | By:/s/ *Matthew E. Lee* |
| | | Matthew E. Lee |
| | | Attorneys for Plaintiffs |
| | | MARK COMIN AND MARK BRIGGS |
| Dated: October 20, 2022 | | JONES DAY |
| | | By:/s/ *Cindi L. Ritchey* |
| | | Cindi L. Ritchey |
| | | Attorneys for Defendant |
| | | INTERNATIONAL BUSINESS MACHINES CORPORATION |

**SIGNATURE ATTESTATION**

I, Cindi Ritchey, hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: October 20, 2022

By: /s/ *Cindi Ritchey*
Cindi Ritchey

Attorney for Defendant